**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **VILLAGE OF BEDFORD PARK, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | Case No. 13 C 5633 |
| ) | |
| **EXPEDIA, INC. (WA), et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Fourteen Illinois municipalities, on behalf of a putative class of 276 municipalities, have sued a number of online travel companies for unpaid taxes. The plaintiffs allege that the defendants failed to remit taxes owed under their municipal hotel tax ordinances. Defendants removed the case to federal court on the basis of the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) & 1453. Plaintiffs have now moved to certify the class under Federal Rule of Civil Procedure 23(b)(1) & (b)(3). For the reasons stated below, the Court denies the motion without prejudice.

## Background[1]

The named plaintiffs are fourteen municipalities in Illinois. Each has imposed a tax on the rental of hotel rooms within its borders. Plaintiffs group these hotel tax

---

[1] The Court assumes familiarity with the plaintiffs' allegations in this case and will summarize them only briefly here. A more detailed recounting of the plaintiffs' allegations can be found in the Court's March 13, 2014 decision on defendants' motion to dismiss. *See Vill. of Bedford Park v. Expedia, Inc.*, No. 13 C 5633, 2014 WL 983129 (N.D. Ill. March 13, 2014).

ordinances into four categories, which the plaintiffs offer as possible subclasses: ordinances that impose a tax upon (1) the use and privilege of a hotel room; (2) the rental of hotel accommodations; (3) persons engaged in the business of renting hotel rooms; and (4) consideration received for renting a hotel room.

The defendants are online travel companies. Defendants contract with individual hotels and pay wholesale rates for rooms at those hotels; defendants then rent the rooms directly to the public for a higher retail price. The price defendants charge customers includes the wholesale rate, a facilitation fee, and an amount labeled "Taxes & Services," which consists of an estimate of the hotel tax due and other service costs. After these customers complete their stays at the hotels, the hotels bill defendants for the wholesale rate and a tax based on the wholesale rate. Defendants then pay the hotels.

Plaintiffs claim that their hotel tax ordinances apply to the retail rate charged to customers, not just the wholesale rate. They allege, therefore, that the defendants have failed to remit taxes owed under the hotel tax ordinances.

In September 2013, defendants moved to dismiss seven of the ten claims in plaintiffs' complaint for failure to state a claim. The Court granted defendants' motion. Plaintiffs filed this motion for class certification on October 3, 2014.

**Discussion**

A party seeking class certification must "affirmatively demonstrate [ ] compliance" with the requirements of Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Rule 23(a) requires the party seeking certification to demonstrate that the class is so numerous that joinder of all members is

2

impracticable (numerosity); there are questions of law or fact common to the proposed class (commonality); the class representatives' claims are typical of the claims of the class (typicality); and the representative will fairly and adequately represent the interests of the class (adequacy).  The party must also establish that the proposed class falls within at least one of the three categories in Rule 23(b).

In this case, plaintiffs seek certification under both Rule 23(b)(1)(A) and Rule 23(b)(3).  Rule 23(b)(1)(A) permits class certification if separate actions by or against individual class members would create a risk of "varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Rule 23(b)(3) permits class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance) and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority).

For the reasons stated below, the Court concludes that Rule 23(b)(1)(A) and Rule 23(b)(3) are not satisfied.  Because these issues are dispositive, the Court need not address defendants' typicality and adequacy arguments.[2]  To provide guidance for the remainder of this litigation, however, the Court will briefly address commonality before discussing Rule 23(b)(1)(A) and 23(b)(3).

**A. Commonality**

As discussed above, Rule 23(a)(2) requires the party seeking certification to demonstrate that there are questions of law or fact common to the proposed class.  To

---

[2] In any event, defendants' typicality, adequacy, predominance, and superiority arguments all rest on the same alleged differences between the ordinances. Accordingly, if plaintiffs are somehow able to reconcile these alleged differences, most of defendants' typicality and adequacy arguments likely would fall away.

3

establish commonality, plaintiffs must demonstrate that the class members' claims depend upon a common contention that is capable of classwide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart*, 131 S. Ct. at 2551. In this inquiry, "even a single common question will do." *Id.* at 2556 (internal alterations and quotation marks omitted). Relying on the Supreme Court's decision in *Wal-Mart*, the Seventh Circuit has explained that plaintiffs must show "that they share some question of law or fact that can be answered *all at once* and that the *single answer* to that question will resolve a central issue in all class members' claims." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012). Superficial common questions, such as "whether each class member 'suffered a violation of the same provision of law'—are not enough." *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2551). "Rather, '[c]ommonality requires the plaintiffs to demonstrate that the class members have suffered the same injury.'" *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2551).

Plaintiffs contend that commonality is satisfied because "the defendants have engaged in standardized conduct toward members of the proposed class." Pls.' Mot. for Class Certification at 7. Specifically, each of the defendants has failed to "remit [t]axes on its markup or fees to any [p]laintiff or [c]lass member, regardless of ordinance language." *Id.* at 8-9. Because defendants' business practices were uniform, plaintiffs reason that "[t]he evidence presented will be common, not individualized." *Id.*

Defendants argue that "the varied language of the different ordinances"—even within the proposed subclasses—precludes resolving an issue that is central to plaintiffs' claims in "one stroke." Defs.' Resp. in Opp'n to Pls.' Mot. for Class Certification at 8-9.

4

They contend, therefore, that plaintiffs have failed to "identify a common, controlling thread that makes such a liability determination applicable to all of the ordinances" and that they should not be allowed to "simply dodge this issue by focusing on the similarities among" the defendants' business practices. *Id.* at 9.

In *Wal-Mart*, an employment discrimination suit, commonality was not satisfied because "[t]he only corporate policy that the plaintiffs' evidence convincingly establishe[d] [was] Wal-Mart's 'policy' of allowing discretion by local supervisors over employment matters." *Wal-Mart*, 131 S. Ct. at 2554. As the Court noted, "[o]n its face, of course, that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy against having uniform employment practices." *Id.* Accordingly, "[w]ithout some glue holding the alleged reasons for all those decisions together, it [would] be impossible to say that examination of all the class members' claims for relief [would] produce a common answer to the crucial question *why was I disfavored*." *Id.* at 2552. In other words, merely establishing that Wal-Mart granted discretion to local supervisors would not resolve an issue central to the class members' claims, as some of the supervisors exercised their discretion in a discriminatory manner, but others did not. Importantly, the Court in *Wal-Mart* did not hold that the answer to the common question must resolve in a single fell swoop whether the defendant is liable; rather, the Court held that the common question must "resolve *an issue that is central* to" whether the defendant is liable. *Wal-Mart*, 131 S. Ct. at 2551 (emphasis added); *see also Sullivan v. DB Invs., Inc.*, 667 F. 3d 273, 299 (3d Cir. 2011) (observing that *Wal-Mart* "mak[es] clear that the focus is on whether the defendant's conduct was common as to all of the class members, not on whether each

5

plaintiff has a 'colorable' claim," and "commonality is satisfied where common questions generate common answers apt to drive the resolution of the litigation" (internal quotation marks omitted)).

Plaintiffs offer a number of supposedly common questions in their motion for class certification, and most of these questions do not meet *Wal-Mart*'s standard. For instance, plaintiffs argue that whether the defendants had a legal to duty to collect and remit taxes to the plaintiffs is a common question. Although this question is indeed common to all of the plaintiffs, it cannot be answered on a classwide basis because the ordinance language varies widely. Similarly, plaintiffs argue that whether the defendants sell or rent accommodations is a common question. Although this question is indeed common to all of the plaintiffs, and this question can be resolved on a classwide basis, it is not central to the validity of their claims.

One of plaintiffs' common questions, however, does satisfy the commonality requirement: Whether the defendants had a corporate policy against remitting taxes on the retail room rate charged to consumers. Unlike the corporate policy in *Wal-Mart*, this actually could be a uniform policy—plaintiffs allege that the defendants uniformly failed to pay taxes on the retail room rate. And the answer to this question is central to the validity of their claims: if defendants had this policy, then they would be liable under any hotel tax ordinance that taxed the retail rather than the wholesale room rate; if defendants did not have this policy—if they did, in fact, remit the taxes—then they would not be liable. In this sense, then, the question generates an answer that is apt to drive the resolution of the litigation, even if, in the end, certain of the plaintiffs might not be able to prevail under their respective ordinances.

6

**B.     Rule 23(b)(3) requirements**

    **1.     Predominance**

Under Rule 23(b)(3), plaintiffs must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members." The predominance criterion "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted). This is "far more demanding" than Rule 23(a)'s commonality requirement, under which a plaintiff need only establish that a single common question exists. *Id.* at 623-24. That said, the predominance inquiry is "a qualitative assessment" and is not akin to "bean counting" or "counting noses." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). To satisfy the predominance requirement, plaintiffs need not show "common results for members of the class" in addition to "common evidence and methodology." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 819 (7th Cir. 2012). They also "need not . . . prove that the predominating question will be answered in their favor." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013).

Defendants argue that predominance is not satisfied because hotel tax ordinances vary widely as to "who" and "what" is taxed and because damages cannot be calculated in a formulaic manner. The Court agrees with the defendants' arguments regarding variation among the hotel tax ordinances and therefore holds that a Rule 23(b)(3) class cannot be certified at this time. To provide guidance for the remainder of this litigation, however, the Court will also address some of the defendants' other arguments.

### a. Differences among hotel tax ordinances

Plaintiffs argue that common issues predominate over issues affecting only individual class members because defendants' "liability is subject to class-wide proof." Pls.' Mot. for Class Certification at 14. They also contend that any differences between the hotel tax ordinances can be addressed by arranging the class members into four subclasses. *Id.* at 2.

Defendants argue that predominance is not satisfied because the language of the 276 ordinances varies widely, even if the class is divided into the four subclasses that plaintiffs propose. Defs.' Resp. in Opp'n to Pls.' Mot. for Class Certification at 14. Specifically, defendants point to differences with regard to "who" is required to collect the tax and "what" is to be taxed. *Id.* This variation, defendants assert, would require the Court to separately interpret each of the 276 ordinances. Thus, they say, it would be impossible "to reach a simultaneous, class wide (or subclass wide) decision on liability." *Id.* (internal quotation marks omitted).

Plaintiffs respond by arguing that the defendants' "actions speak louder than their words." Pls.' Reply to Defs.' Resp. to Mot. for Class Certification at 22. They contend that defendants' corporate policy applies across the 276 municipalities and that "at least in practice," the defendants thus apparently "believe that all ordinances tax the same 'what' and are owed by the same 'whos.'" *Id.* at 22-23. Plaintiffs emphasize, moreover, that the defendants "only identify seven allegedly different categories of 'who' language and six allegedly different categories of 'what' language . . . ." *Id.* at 23. Additionally, they note that "[n]o party has taken the position that the language differences that do

8

exist are material or alter the outcome as to 'who' should remit taxes or to 'what' amount taxes apply." *Id.* at 10.

Plaintiffs miss the point. The fact that defendants' course of conduct was the same statewide—and, therefore, the defendants may be liable to each plaintiff—does not, on its own, establish that a class action is appropriate. When a proposed class spans multiple jurisdictions, variations in the applicable law across the jurisdictions may "swamp any common issues and defeat predominance." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1261 (11th Cir. 2004); *see also* 1 McLaughlin on Class Actions § 5:46 (11th ed. 2014) (observing that "recent case law is legion holding that variances—and 'even nuances'—in the substantive law of the states precludes certification of nationwide or multi-state litigation classes alleging state law claims"). If the applicable laws "can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate." *Id.* at 1262. "The burden of showing uniformity or the existence of only a small number of applicable standards," however, "rests squarely with the plaintiffs." *Id.* (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986)); *see also Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004) ("The plaintiffs have the burden of showing that common questions of law predominate, and they cannot meet this burden when the various laws have not been identified and compared.").

Plaintiffs have not met this burden. It is true that because some of the ordinances contain the same or similar language, the Court would not need to separately interpret all 276 ordinances. But plaintiffs must show more than this; they

9

must establish that these ordinances can be arranged into a manageable number of groups containing materially identical legal standards. Their four proposed subclasses do not measure up to the task. As defendants point out, the ordinances vary widely within the proposed subclasses and thus could impose different legal obligations.

Plaintiffs' first proposed subclass encompasses all municipalities that have imposed a tax upon the "use and privilege" of a hotel room. These ordinances, however, differ widely as to "who" is responsible for collecting the tax. Twenty-seven of the ordinances state that the owner, operator, and person to whom the license to operate hotel has been issued are responsible; four state that the owner and operator are responsible; five state that the owner, manager, and operator are responsible; eight state that only the owner is responsible; ten state that only the operator is responsible; two state that the hotel is responsible; one states that anyone engaged in the business of renting, leasing, or letting a hotel room is responsible; and one doesn't state anything at all. And plaintiffs do not say whether they consider defendants to be owners, operators, both, or something else entirely. Additionally, the ordinances use seven different phrases to describe "what" is taxed, including "gross rental receipts," "rental or lease payment," "room rental rate," and "one night room charge." Although plaintiffs assert that each of these phrases imposes a tax upon the retail room rate, they do not provide a legal argument for why this is so. Thus the Court is not in a position to say, based on the present record, that common questions would predominate over individual questions as to this proposed subclass.

Even when the ordinances use the same language to identify who is responsible for collecting the tax, their definitions of these terms vary. Take, for instance, the ten

10

ordinances among those in the first proposed subclass that state that the operator alone is responsible for collecting the tax. Crystal Lake's ordinance defines the term "operator" as "[t]he person who is proprietor of the hotel, whether in the capacity of owner, lessee, sublessee, mortgagee in possession, licensee, or any other capacity." Crystal Lake, Ill., Code § 467-38 (1993) (eff. Oct. 1, 2002). Oak Forest's ordinance, by contrast, defines operator as "[a]ny person conducting the operation of a hotel accommodation or receiving consideration for the rental or lease of a hotel accommodation, including, but not limited to, the owner or manager of a hotel accommodation." Oak Forest, Ill., Code § 117.15 (2000) (eff. Dec. 12, 2006). Brookfield's ordinance defines operator as "any person operating a hotel." Oak Forest, Ill., Code § 30-115 (2013) (eff. July 12, 2010). Alsip's ordinance doesn't define operator at all. Alsip, Ill., Code § 18-81 (2013) (eff. Mar. 16, 1998).

Plaintiffs may have a theory for how these differences can be reconciled. If so, this theory is not described in their briefs. In short, on the present record, these appear to be individual questions.

Plaintiffs' next proposed subclass encompasses all municipalities that have imposed a tax upon the rental of hotel accommodations. Unlike the use and privilege subclass, there are only two types of ordinances in this subclass. Seventeen of the ordinances tax "operators" alone, and these ordinances all use the phrase "gross rental receipts" to describe what is taxed. The remaining thirty-two of the ordinances state that the "owner, manager, and operator" are responsible for collecting the tax, and all but two of these ordinances use the phrase "gross rental or leasing charge" to describe what is taxed. This subclass, then, may be more amenable to class certification than

11

the use and privilege subclass. But plaintiffs neither explain why these two types of ordinances are materially identical, nor do they argue that this subclass could be split into two smaller subclasses. Indeed, they do not address the fact that there are two types of ordinances at all.

Plaintiffs' third proposed subclass encompasses all municipalities that have imposed a tax upon persons engaged in the business of renting hotel rooms. All ninety-three ordinances in this subclass use this language, and ninety-one of the ordinances use the phrase "gross rental receipts" to describe what is taxed (the remaining two use the phrase "rental or lease payment"). On the face of it, then, this subclass appears to be a decent candidate for class certification. But as the defendants point out, even though the ordinances all say that the tax applies to persons engaged in the business of renting hotel rooms, the ordinances differ with regard to who is responsible for collecting the tax. For instance, whereas Savanna states that the operator is responsible for collecting the tax, Des Plaines states that the owner of the hotel room is responsible.

Plaintiffs' last proposed subclass encompasses all municipalities that have imposed a tax upon any person receiving consideration for the rental of a hotel room. Although all seventy-six ordinances in this subclass have this language, they use five different phrases to describe what is taxed, including "room rental rate," "rental or leasing charge," and "gross rental or leasing charge." Additionally, as the defendants point out, this subclass lacks a representative plaintiff. Without a representative, the Court would not be able to certify this subclass.[3]

---

[3] If the class as a whole could be certified, then the Court could create this subclass for manageability purposes under Rule 23(d), which would not require a representative plaintiff. But because the Court cannot certify the class as a whole, it also cannot certify

12

These variations between the ordinances may or may not be as significant as defendants suggest. Indeed, defendants do not actually state that the ordinances establish materially different legal standards; they merely point to the variations and argue that the Court would need to perform an ordinance-by-ordinance analysis to determine whether there are material differences. Plaintiffs do next to nothing to explain why this is not so. That is enough to deny the motion for class certification. It is plaintiffs' burden to demonstrate that the proposed subclasses are governed by materially identical legal standards, and they have failed in that regard.[4]

It may be that plaintiffs can resolve these problems by configuring the proposed subclasses in a different way or describing why what the Court has found appear to be ordinance-by-ordinance questions actually are not. Their present motion, however,

---

this subclass without a named plaintiff. If plaintiffs later file another motion for class certification, they should consider adding a representative plaintiff to represent this subclass.

[4] Plaintiffs note that four federal courts have certified similar classes. Pls.' Mot. for Class Certification at 2. The ordinances at issue in those cases, however, were materially identical. *See City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 529 (M.D. Tenn. 2010) ("[E]ach of the relevant tax ordinances uses a substantively identical definition of 'operator,' and the primary issue in this litigation is whether the defendants are 'operators' who are responsible for remitting tax payments."); *Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010) (noting that all of the class members' "ordinances track the language of the Enabling Act verbatim or nearly verbatim, or simply incorporate the language of the Enabling Act by reference"); *City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2008 WL 2486043) (noting that the defendants "attempt to defeat typicality by pointing to two differences in the language of the San Antonio ordinance," but concluding that "[t]hese differences do not appear to be relevant or material to the issues to be decided in this case"); *City of Rome v. Hotels.com*, No. 05-CV-249-HLM, at 60 (N.D. Ga. Mar. 21, 2011) (concluding that the "ordinances largely track the Enabling Statute").

does not establish predominance. They have painted with a very broad brush, which is insufficient to carry their burden under Rule 23.

### b. Damages

Defendants also argued that predominance is not satisfied because "the determination of damages would require a mini-trial for each municipality . . . ." Defs.' Resp. in Opp'n to Pls.' Mot. for Class Certification at 20. They offer three reasons for why this is so. First, defendants contend that "any damages calculation necessarily requires a determination of what statute of limitations applies, and they vary." *Id.* at 20-21. Second, defendants argue that plaintiffs' estoppel defenses to these statute of limitations arguments "would necessarily require an inquiry into each municipality's knowledge of the [d]efendants' business practices, including when that knowledge was formed over the fifteen year damages period." *Id.* at 21. Third, the defendants assert that "individual inquiries would be necessary to determine whether penalties and/or interest should be applied, and if so, whether abatement of any such amounts would be appropriate." *Id.* at 22. Plaintiffs contend that the damages calculations "will be formulaic across municipalities" and that varying tax rates, penalties, interest, abatements, and statutes of limitations can be inputted "in a formulaic way across all of the municipalities in this case." Pls.' Reply to Defs.' Resp. to Mot. for Class Certification at 11.

The need for individual damages determinations does not automatically defeat class certification under Rule 23(b)(3). *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008); *see also* 2 William B. Rubenstein & Alba Conte, Newberg on Class Actions § 4.54 (5th ed. 2013) ("Courts in every circuit have . . . uniformly held that the 23(b)(3)

predominance requirement is satisfied despite the need to make individualized damage determinations."). Indeed, as the Seventh Circuit recently held, "[i]f the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013); *see also Messner*, 669 F.3d at 819 ("[C]ommon proof of damages for class members . . . is not required."). Certifying a liability-only class is also an option. *See* Fed. R. Civ. P. 23(b)(4).

Plaintiffs have persuaded the Court that damages can be calculated in a simple and formulaic manner. Although the inputs may differ, the calculation will proceed by the same mathematical formula for each municipality. Moreover, the formula itself will involve little more than addition, subtraction, and multiplication. Even if individual claims and defenses on statute of limitations emerge, those arguments do not appear to be particularly complex and thus could be "readily determined in individual hearings." *Butler*, 727 F.3d at 801; *see also In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) (noting that "[m]any courts faced with similar circumstances have certified class status with the expectation that individual questions concerning" statutes of limitation "can be resolved at a later damages phase"). Accordingly, the Court holds that these matters would not undermine predominance.

### 2. Superiority

Under Rule 23(b)(3), plaintiffs must also demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating" the

controversy. This requirement, along with the predominance requirement, is intended "to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.*, 521 U.S. at 615 (internal quotation marks and alterations omitted).

Plaintiffs contend that class treatment is a superior vehicle for their claims because "forcing 276 municipalities to file lawsuits in different courts across" Illinois would "waste time, money and judicial resources." Pls.' Mot. for Class Certification at 14-15. They also assert that "certain municipalities will not be able to afford litigation at all and others will not be able to justify pursuing it because their amount in dispute is too small." Pls. Reply to Defs.' Resp. to Pls.' Mot. for Class Certification at 25. Defendants argue, in turn, that the "vast differences in ordinance language will render it not manageable as a class action." Defs.' Resp. in Opp'n to Pls.' Mot. for Class Certification at 26.

As discussed in the previous section, plaintiffs have failed to demonstrate that the 276 different ordinances can be arranged into a modest number of subclasses with materially identical legal standards. Absent this showing, certifying this case as a class action would present serious manageability problems. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (holding that because the plaintiffs "claims must be adjudicated under the law of so many jurisdictions," a class action would not be manageable). If plaintiffs can reconcile the variations among these ordinances, a class action might be an appropriate vehicle for their claims, though the Court declines to rule at this time.

**C.     Rule 23(b)(1)(A) requirements**

Plaintiffs also contend that their proposed class satisfies Rule 23(b)(1)(A), which applies when "inconsistent or varying adjudications with respect to individual class members . . . would establish incompatible standards of conduct for the party opposing the class."  Certification under 23(b)(1)(A) is appropriate when "individual adjudications would be impossible or unworkable."  *Wal-Mart*, 131 S. Ct. at 2558.  As plaintiffs note, a suit based on a government-imposed tax is a textbook example of when certifying a 23(b)(1)(A) class action may be appropriate:  "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; *a government imposing a tax*) or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997) (emphasis added).

Although this case involves tax ordinances, it does not warrant Rule 23(b)(1)(A) certification.  That rule contemplates a lawsuit based on a single tax law or, at the very least, tax laws with materially identical legal requirements.  *See Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortgage Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) (concluding that "various state laws apply to different class members" and, accordingly, "varying judgments with respect to Plaintiffs' injunctive requests would not be 'incompatible' but rather would reflect diverse state [ ] law").  Here, by contrast, plaintiffs have sued under 276 different tax ordinances, which as discussed may impose entirely different legal requirements—plaintiffs have not shown otherwise.  Under these circumstances, "dissimilar outcomes . . . are insufficient to justify class certification."  *Id.* at 198.  Additionally, because damages are a significant part of the relief requested, this

case may present the sort of "individualized monetary claims" that "belong in Rule 23(b)(3)." *See Wal-Mart*, 131 S. Ct.at 2558 (noting that "[p]ermitting the combination of individualized and classwide relief in a (b)(2) class is also inconsistent with the structure of Rule 23(b)"). The fact that damages may be calculated in a formulaic manner does not mean that the damages assessments will not be individualized; it simply means that individual issues will not overwhelm classwide issues.

**D.    Administrative exhaustion**

In a separate section of their brief, defendants argue that "class certification should be denied" because "nearly every named [p]laintiff and most putative class members have adopted mandatory statutory administrative procedures for the enforcement of hotel taxes . . . ." Defs. Resp. in Opp'n to Pls.' Mot. for Class Certification at 27. Accordingly, defendants contend, the proposed class is not sufficiently definite and identifiable. *Id.* at 28. They also argue that numerosity, commonality, typicality, predominance, and superiority are not satisfied. *Id.* at 26-30.

Because the Court's rulings with regarding to Rule 23(b)(1) and 23(b)(3) are dispositive, the Court need not reach these arguments. The Court notes, however, that it is unpersuaded by plaintiffs' two arguments in response to the administrative exhaustion argument. First, plaintiffs contend that administrative exhaustion is not required when the agency itself pursues the judicial remedy. Pls. Reply to Defs.' Resp. to Pls.' Mot. for Class Certification at 26. They note that in two cases involving similar parties and claims, a federal district court in the Florida and a state court in New Hampshire rejected administrative exhaustion arguments for this reason. *Id.* at 26-27. Both of these decisions, however, relied on the fact that administrative exhaustion is not
18

a jurisdictional requirement in those states. *See Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 664 (S.D. Fla. 2010) (observing that in Florida, administrative exhaustion "is more akin to a prudential abstention doctrine, to be followed—if at all—in the discretion of the court"); Pls.' Ex. 27, *State of New Hampshire v. Priceline.com, Inc.*, No. 2013-CV-613, at 6-8 (N.H. Super. Ct. June 27, 2014) (concluding that administrative exhaustion was not required because the New Hampshire tax code provides that administrative action is optional when a tax return is not filed). Where, however, administrative exhaustion is a jurisdictional requirement, some federal courts have required administrative exhaustion. *See City of Oakland, Cal. v. Hotels.com LP*, 572 F.3d 958, 960 (9th Cir. 2009) (observing that "[u]nder California law, exhaustion of administrative remedies is a jurisdictional requirement," and holding that the City of Oakland could not "simply sue in federal court without exhausting its administrative remedies"); *see also City of Monroe, Fla.*, 265 F.R.D. at 665 n.4 (finding the Ninth Circuit's decision in *City of Oakland* "legally distinguishable in that it applied California law, which treats exhaustion of remedies as a jurisdictional requirement"). To meet defendants' administrative exhaustion argument, plaintiffs must address the law of administrative exhaustion in Illinois specifically. They have not done so.

Second, plaintiffs argue that administrative exhaustion would be futile because "their track record across the nation proves that they will battle to the highest court before paying [r]etail [r]ate taxes on overnight accommodations." Pls.' Reply to Defs.' Resp. to Pls.' Mot. for Class Certification at 27. Futility is a recognized exception to administrative exhaustion in Illinois. *Castaneda v. Ill. Human Rights Comm'n*, 132 Ill. 2d 304, 309, 547 N.E.2d 437, 439 (1989). And the Court acknowledges that federal district

19

courts in other states have been persuaded by this argument. *See, e.g.*, *City of Monroe, Fla.*, 265 F.R.D. at 664-65. This Court is not. As the Ninth Circuit observed, if the futility exception was "triggered by a taxpayer taking the position that the tax is not owed, the exception would swallow the rule." *City of Oakland*, 572 F.3d at 962.

**Conclusion**

For the foregoing reasons, the Court denies the motion for class certification without prejudice [dkt. no. 150].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 6, 2015

20