IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VILLAGE OF BEDFORD PARK, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 13-5633 |
| EXPEDIA, INC. (WA), *et al.*, | Judge Matthew F. Kennelly |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THE VIABILITY OF THEIR
EXHAUSTION DEFENSE IN RESPONSE TO THE
COURT'S FEBRUARY 13, 2015 ORDER**

Plaintiffs sued Defendants claiming that Defendants owed taxes to them and every other

municipality in Illinois with a hotel tax. They did so without pursuing any of the administrative

processes required by their own tax ordinances. Because those processes were intended, in part,

to benefit Defendants with procedural due process and individualized treatment of their claims

and defenses, in their answers to Plaintiffs' class action complaint, Defendants pled the

affirmative defense of failure to exhaust administrative remedies.

The Court has subject matter jurisdiction over a case, such as this one, that contains the

affirmative defense of failure to exhaust administrative remedies. Indeed, as evidenced by the

fact that Plaintiffs initially filed this case in federal court, the parties were until recently united

on that position. Under Illinois law, original jurisdiction exists in its courts on all matters

brought under Illinois law unless a legislature has explicitly vested exclusive original jurisdiction

in an administrative agency. The legislature did not do so here. Under these circumstances,

failure to exhaust an administrative remedy can be pled as an affirmative defense and litigated in

connection with summary judgment. The deadline for summary judgment has not passed.

Defendants last raised the exhaustion issue in class certification briefing. Defendants correctly showed that the exhaustion defense must be decided on a municipality-by-municipality basis. It cannot be decided for the entire class in one swoop. The Court denied class certification without prejudice, leaving open the possibility that Plaintiffs could re-move for class certification if they could "reconcile the variations among the [class members' varying tax] ordinances" and, presumably, resolve the exhaustion issue. Dkt. 188 at 16, 20. Plaintiffs have not re-moved for class certification.

If Plaintiffs do not re-move for class certification, there is no need to litigate the exhaustion affirmative defense at all. In the class action context, where over 200 varying municipal ordinances would be lumped together without individualized treatment, a key advantage of administrative process is that it would allow Defendants to have their claims considered individually and provide greater focus on the Defendants' defenses for each individual ordinance. However, that advantage also exists if the case does not proceed as a class action. Thus, Defendants offered to waive their exhaustion affirmative defense as to the fourteen named Plaintiffs so long as they do not re-move for class certification. Plaintiffs rejected that offer.

Defendants should not be required to make a decision relating to their affirmative defense until they have a full view of the legal landscape of the case (including whether the case will be litigated as a class action). Accordingly, Defendants respectfully propose that the Court take whatever actions are necessary to facilitate a final ruling regarding whether this case will proceed as a class action or as individual actions, as that determination could moot the exhaustion issue. Alternatively, because this case currently stands as fourteen individual actions, Defendants will waive without prejudice their exhaustion affirmative defense as to the fourteen named Plaintiffs

2

currently before the Court, with leave to reassert the defense against Plaintiffs and absent class members if Plaintiffs re-move for class certification.

In sum, for the reasons that follow, the exhaustion affirmative defense does not divest the Court of subject matter jurisdiction; it has not been waived; and it is viable and can be litigated should Plaintiffs move again for class certification.

## BACKGROUND

Prior to filing this lawsuit, none of the Plaintiffs notified any Defendant about the allegedly unpaid hotel taxes. Defendants received no letter or notice of tax due, and no municipal employee otherwise contacted any Defendant about any tax liability.

Plaintiffs originally filed this case in federal court, and then voluntarily dismissed it, only to immediately re-file in Illinois state court. Defendants removed this case back to federal court, and Plaintiffs did not challenge this Court's jurisdiction. On September 13, 2013, Defendants filed their partial motion to dismiss, Dkt. 33, which this Court granted on March 13, 2014, Dkt. 61. In their answers and amended answers in this case, Defendants asserted exhaustion of administrative remedies as an affirmative defense. Dkt. Nos. 45, 130-1, 48, 46, 129, 47, 131.

Plaintiffs denied a request for admission regarding exhaustion at the outset of written discovery. Dkt. 195-1 at Ex. C. Consequently, Defendants' class certification discovery included the unpublished legislative and enforcement history of Plaintiffs' tax ordinances (including prior versions of the ordinances that were in effect during time periods at issue in this litigation). Much of that relevant legislative history, most particularly concerning those ordinances implementing the Local Government Taxpayers' Bill of Rights Act, 50 ILCS 45/1, *et seq.*, was not produced until days before, at, or even after Plaintiffs' 30(b)(6) depositions.[1]

---

[1] The legislative history of the Local Taxpayers' Bill of Rights Acts was not produced in advance of the first round of depositions of Plaintiffs' corporate representatives. *See, e.g.*, Ex. C,

Likewise, Defendants asked Plaintiffs' 30(b)(6) witnesses about the enforcement of those and other ordinance provisions in the individual municipalities, and received testimony that varied considerably across municipalities. *See* Dkt. 195 at 4 n.2. For their part, Plaintiffs similarly pursued 30(b)(6) deposition testimony regarding the Defendants' exhaustion defense, including whether exhaustion would be futile. Ex. A, Plaintiffs' 30(b)(6) Topic list at Topic 15; Ex. B, 6/16/14 Tr. at 13-19 (Plaintiffs' counsel explains that the topic goes to futility).

On October 3, 2014, Plaintiffs filed their motion for class certification. Dkt. 148. On November, 25, 2014, Defendants filed their response to Plaintiffs' class certification motion and demonstrated that, among other major issues, exhaustion of administrative remedies served as a bar to class certification. Plaintiffs argued (incorrectly) that all such issues should be ignored, either because exhausting administrative requirements would be universally futile or because exhaustion is never required for taxing authorities. Dkt. 186 at 25-30.

On January 6, 2015, the Court denied class certification without prejudice. *Id.* at 16, 20. In denying Plaintiffs' motion for class certification, the Court concluded that the differences in the putative class members' hotel tax ordinances meant that common issues did not predominate and the class would be unmanageable. Dkt. 188 at 13-14, 16. The Court's Order also stated that the Court was not persuaded by Plaintiffs' argument that administrative procedures could be excused on the grounds of futility, because "if the futility exception was 'triggered by a taxpayer taking the position that the tax is not owed, the exception would swallow the rule.'" *Id.* at 20 (*quoting City of Oakland, Cal. v. Hotels.com LP*, 572 F.3d 958, 962 (9th Cir. 2009)). The Court

---

Juarez Tr. 114:14-15:25 (stating that representative had no memory of instructions to gather legislative history related to Local Taxpayers' Bill of Rights Act). As a result, Defendants wrote a letter seeking production of this information, Ex. D, 6/27/14 Letter from Henning to Beightol, and Plaintiffs formally supplemented their production of documents after 30(b)(6) depositions were complete, Ex. E, 8/8/14 Plaintiffs' Second Supp. Resp. and Obj. to Defendants' First RFPs.

cautioned that Plaintiffs could only defeat Defendants' exhaustion defense through "the law of administrative exhaustion in Illinois specifically." *Id.* at 19. Consequently, the Court informed the parties on January 7, 2015 that "what I have right now from my way of thinking is . . . an individual lawsuit involving a dozen or so plaintiffs." Dkt. 195-1 at Ex. A.

On February 3, 2015, Plaintiffs filed a motion to "clarify" whether the Court had decided Defendants' exhaustion defense on the merits. Dkt. 191. Plaintiff Oakbrook Terrace filed a separate motion to "clarify" on February 9, 2015. Dkt. 194-1. Although the majority of the Plaintiffs argued that any mandatory exhaustion requirement was necessarily jurisdictional (Dkt. 191), Oakbrook Terrace admitted that exhaustion is not jurisdictional, but instead is an affirmative defense. *Id.* at 7. On February 13, 2015, this Court denied Plaintiffs' and Oakbrook Terrace's motions to clarify, but requested briefing on "the viability of the exhaustion defense and the effect of it . . . in other words, is it a viable defense and – and is it jurisdictional or not." Dkt. 199; Ex. F, 2/13/15 Tr. at 12.

## ARGUMENT

I.  **IN THIS CASE, EXHAUSTION OF ADMINISTRATIVE REMEDIES IS AN AFFIRMATIVE DEFENSE THAT DOES NOT STRIP THE COURT OF SUBJECT MATTER JURISDICTION**

### A.  **The Court Has Subject Matter Jurisdiction**

As Defendants—and Oakbrook Terrace—have already shown, the Court has subject matter jurisdiction over this case. Illinois courts (and by extension federal courts exercising CAFA jurisdiction[2]) have original jurisdiction of all matters under Illinois law unless a

_____

[2] In a CAFA action such as this one, the Court should "look to . . . state law to determine whether or not [a particular defense to a state law cause of action] is an affirmative defenses for the purposes of [Federal Rule of Civil Procedure] 8(c)." *Roskan Baking Co. v. Lanham Mach. Co*, 288 F.3d 895, 901 (6th Cir. 2002); *Williams v. Jader Fuel Co.*, 944 F.3d 1388, 1400 (7th Cir. 1991) (same); *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 634 (7th Cir. 2007), *abrogated on other grounds by Clapper v. Amnesty Int'l USA,* 133 S. Ct. 1138 (2013) (in CAFA case, federal

legislature has "explicitly" "vest[ed] exclusive original jurisdiction in an administrative agency." *See Employers Mut. Cos. v. Skilling*, 644 N.E.2d 1163, 1165 (Ill. 1994). In *Skilling,* the Illinois Supreme Court found that a statutory provision of the Workers Compensation Act providing that "all questions arising under this [Workers Compensation] Act . . . shall . . . be determined by the [Workers Compensation] Commission" was "insufficient to divest the circuit court of jurisdiction" of a declaratory judgment claim concerning the proper scope of the act because "no language in [the act] specifically excluded the circuit courts from deciding such cases." *Id.* at 1165. By contrast, the Illinois Supreme Court found that a provision of the Illinois Pension Act divested the circuit court of jurisdiction when the Act stated that the Retirement Board of the Policeman's Annuity and Benefit Fund of Chicago "shall have <u>exclusive</u> original jurisdiction in all matters relating to or affecting the fund[.]" *People ex rel. Madigan v. Burge*, 18. N.E. 3d 14, 19 (Ill. 2014); *see also, e.g.*, *Vill. of S. Elgin v. Waste Mgmt. of Ill., Inc.*, 810 N.E.2d 658, 666 (Ill. App. Ct. 2004) (Illinois Environmental Protection Act divested circuit courts of jurisdiction by its explicit mandate that the approval and appeal procedures provided for in this Act "shall be the <u>exclusive</u> . . . rules and appeal procedures" for pollution control facilities (emphasis added)).

None of Plaintiffs' hotel tax ordinances contain language that specifically precludes state circuit courts from hearing the ordinance claims at issue in this case. Nor does the Local Taxpayer Bill of Rights Act issued by the state of Illinois (which controls for municipalities without specific legislation like Rockford) contain any such jurisdiction-stripping provisions. *See* 50 ILCS 45/1 *et seq.* In fact, Plaintiffs have pointed to language in some of their municipal ordinances suggesting that circuit courts have *not* been stripped of their original jurisdiction. Dkt. 191 n.47. The Illinois Supreme Court has *repeatedly* stated that where, as here, a statute

court's duty "is to apply state substantive law as we believe the highest court of the state would apply it").

requires exhaustion but does not strip the courts of original jurisdiction, exhaustion of administrative remedies is an affirmative defense.  *See, e.g.*, *Millennium Park Joint Venture, LLC v. Houlihan*, 948 N.E.2d 1, 14 (Ill. 2010) ("Exhaustion of administrative remedies is an affirmative defense[.]"); *Hawthorne v. Vill. of Olympia Fields*, 790 N.E.2d 832, 839-40 (Ill. 2003) ("Failure to exhaust administrative remedies is an affirmative defense [.]"); *People v. Fiorini*, 574 N.E.2d 612, 619 (Ill. 1991) (finding exhaustion of remedies defense waived in part because appellant "failed to raise an affirmative defense regarding the failure to exhaust administrative remedies" in the trial court).  Indeed, the Illinois Supreme Court has ruled that exhaustion of administrative remedies *can be waived* if not pled correctly, which underscores that the defense is *not* jurisdictional, at least where, as here, there is no jurisdiction-stripping statutory provision at issue.  *See, e.g.*, *Millennium Park*, 948 N.E.2d at 14 (finding waiver of exhaustion of administrative remedies defense); *Fiorini*, 574 N.E.2d at 619 (same).[3]

Even if federal law governs here—and, as discussed *supra* Note 2, it does not—the Seventh Circuit has repeatedly held that failure to exhaust administrative remedies is *not* jurisdictional where, as here, the particular statutory scheme at issue does not expressly strip the Court of jurisdiction.  *See, e.g.*, *Fluker v. County of Kankakee*, 741 F.3d 787, 792 (7th Cir. 2013) (noting, in Prisoner Litigation Reform Act context, "failure to exhaust administrative remedies does not deprive a court of jurisdiction"); *Frey v. EPA*, 270 F.3d 1129, 1132 (7th Cir. 2001) (noting that a failure to exhaust administrative remedies under CERCLA is not "a problem of 'subject matter jurisdiction'"); *Gray v. United States*, 723 F.3d 795, 799 n.1 (7th Cir. 2013) (holding that mandatory exhaustion pursuant to 28 U.S.C. § 7433 was a non-jurisdictional affirmative defense).  Whether analyzing the issue under state or federal law, this Court has

---

[3] It is well-settled in Illinois (as in the federal courts) that a true defect in subject matter jurisdiction cannot be waived.  *See, e.g.*, *People v. Brautigan*, 142 N.E. 208, 211 (Ill. 1923).

jurisdiction over this lawsuit.

### B.     The Cases Cited in Plaintiffs' Motion To Clarify Are Off-Point

Although most Plaintiffs claim that any "mandatory" exhaustion is necessarily jurisdictional, they have not cited any cases—let alone binding cases—that actually stand for that proposition, despite at least two chances to do so.  *See* Dkt. 191, 197.  The only cases they have cited are both not binding and off-point.  For example, in *Hafeez v. Dorochoff*, No. 06 C 6612, 2007 U.S. Dist. LEXIS 89009, at *16 (N.D. Ill. Nov. 30, 2007), the plaintiff sought review of the government's denial of his wife's petitions to accord him immediate relative status under 8 U.S.C. § 1154.  The government argued that the court lacked jurisdiction in part because the federal Administrative Procedure Act ("APA") governed the matter, required exhaustion of remedies, and stripped the Court of jurisdiction if remedies were not exhausted.  The court disagreed.  *Id.* at *17-18.  That holding is not helpful to Plaintiffs and is in any event completely inapplicable to this case, which does not implicate the federal APA, federal immigration law, or a jurisdiction stripping provision.

Plaintiffs' citations to *Maher v. Harris Trust & Sav. Bank*, No. 90-C-5118, 1994 U.S. Dist. LEXIS 17284, (N.D. Ill. Nov. 23, 1994) (Dkt. 191 at 8 n.49) and *Latz v. Resolution Trust Corp.*, No 92 C 01583, 1992 U.S. Dist. LEXIS 6636, at *1-2 (N.D. Ill. May 1, 1992) (Dkt. 197 at 2 n.6), also miss the mark.  Dkt. 191 at 8 n.49.  Both cases' holdings turned on the statutory requirements of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").  FIRREA expressly strips courts of jurisdiction over certain claims "except as . . . provided" in the act.  12 U.S.C. § 1821(d)(13)(D) ("Except as otherwise provided . . . no court shall have jurisdiction over" a variety of claims covered by the act).  One such exception to the jurisdiction stripping provision is after administrative remedies have been fully exhausted.  *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 391-92 (3d Cir. 1991).  Accordingly, FIRREA's

administrative procedures "must be exhausted to provide the district court with subject matter jurisdiction[.]" *Maher*, 1994 U.S. Dist. LEXIS 17284, at *6; *see also Latz*, 1992 U.S. Dist. LEXIS 6636, at *1-2 (same). Obviously, FIRREA and its jurisdiction-stripping provisions are not at issue here.

Finally, in their reply in support of their motion to clarify, Plaintiffs relied on Illinois Appellate Court cases that used the ripeness doctrine as a basis to state that exhaustion can on occasion be jurisdictional. Dkt. 197 at 2. Those cases do not apply because there is of course a ripe dispute here: Plaintiffs claim that Defendants owe them back hotel taxes, and Defendants dispute that claim. Not surprisingly, Plaintiffs fail to explain why their lawsuit is not ripe. *Id.* at n.3-4. Indeed, one of the cases Plaintiffs cited in support of their argument actually *rejected* a ripeness argument similar to the one they raised here. In that case, the Illinois Appellate Court held that it *did* have jurisdiction to consider an exhaustion defense in the tax context. *NDC, LLC v. Topinka*, 871 N.E.2d 210, 223 (Ill. App. Ct. 2007) (dispute over taxes paid under protest ripe because "the parties' interpretation of the statute requiring payment . . . is at issue").

Accordingly, under both Illinois and Seventh Circuit law, where, as here, the applicable statutes do not vest exclusive original jurisdiction in an administrative agency, failure to exhaust administrative remedies does not strip the Court of subject matter jurisdiction. Instead, exhaustion is properly raised as an affirmative defense, as the Defendants have done here.

## II. DEFENDANTS' EXHAUSTION OF ADMINISTRATIVE REMEDIES AFFIRMATIVE DEFENSE IS VIABLE

### A. Defendants Will Waive Their Exhaustion Defense As To The Fourteen Plaintiffs If This Case Is Not Proceeding as a Class Action

While Defendants have a viable exhaustion of administrative remedies defense, so long as this case is not proceeding as a class action, the viability issue is a moot point. At this time, when class certification has been denied, the only exhaustion issue before the Court is

9

Defendants' exhaustion affirmative defense with respect to the fourteen named Plaintiffs. As Defendants have already communicated to Plaintiffs, they intend to waive their exhaustion of administrative remedies defense as to the fourteen named Plaintiffs if this case does not proceed as a class action. Ex. G, 2/20/15 Letter from Rotatori to Lanzito. Requiring exhaustion of administrative remedies would have provided Defendants the opportunity to have Plaintiffs' claims heard individually, which is crucial if they must defend against 200 plus differing municipal ordinances. Had this case proceeded as a class action, the differing municipal ordinances would have been analyzed in one big lump (or a series of slightly smaller lumps). Now that the case appears poised to proceed as an individual action by the Plaintiffs, Defendants will receive the same rights they would have been afforded by the administrative process—the ability to have their defenses properly analyzed, individually, municipality-by-municipality. Should Plaintiffs re-move for class certification, however, Defendants may wish to pursue administrative remedies in each individual municipality. For these reasons, preserving the exhaustion defense is critical.

At this time, Plaintiffs refuse to agree that they will not re-move for class certification (as the Court's order permits them to do, *see* Dkt. 188 at 16). Plaintiffs have had more than two months to consider the Court's order on class certification and determine if they can overcome the deficiencies outlined in that order. They should be required to disclose how they intend to pursue their case. Needless litigation about a defense that would not be an issue if Plaintiffs were to pursue their claims individually is not an efficient use of judicial resources, nor the parties'. And it is fundamentally unfair to expect Defendants to make strategic decisions concerning a viable defense—a defense whose value changes significantly if the case is not being litigated as a class action—before they know whether they are litigating against fourteen

municipalities or a class of potentially hundreds of municipalities.

Accordingly, the Court should take whatever actions are necessary to facilitate a final ruling on whether this case will proceed as a class action or as individual actions. If the case is not a class action, there will be no issue to decide with respect to the exhaustion affirmative defense. Alternatively, because this case currently stands as fourteen individual actions, Defendants will waive without prejudice their exhaustion affirmative defense as to the fourteen named Plaintiffs currently before the Court, with leave to reassert the defense against both Plaintiffs and absent class members if Plaintiffs re-move for class certification.

## B. Defendants Have Not Waived Their Exhaustion Defense

The Court has asked why Defendants did not raise their exhaustion of administrative remedies defense earlier. Ex. F, 2/13/15 Tr. at 9, Dkt. 191 at 4-6. Neither Illinois law nor the Federal Rules of Civil Procedure required them to do so. Defendants have followed Illinois law and the Federal Rules to the letter; they have not waived their defense. Plaintiffs' arguments to the contrary are misguided.[4]

In a responsive pleading, a party must "affirmatively state any avoidance or affirmative defense[.]" Fed. R. Civ. P. 8(c); *see also* 735 ILCS 5/2-613(d) (requiring that affirmative defenses be set out in responsive pleading). That requirement serves to "avoid surprise and give the opposing party an opportunity to respond." 2-8 Moore's Federal Practice - Civil § 8.08. The

---

[4] The series of Seventh Circuit cases concerning the waiver of the contractual right to arbitrate are inapplicable here. Because arbitration clauses are contractual rights that can be waived either expressly or through the actions of the contracting parties, choosing to litigate a case instead of initiating arbitration can waive them. *See, e.g.*, *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995) (noting that contractual right to arbitration is presumptively waived by litigating in court). That is not analogous to this case, where a defendant merely defends itself against a claim that it contends is invalid and asserts a statutorily based affirmative defense at every opportunity and in full compliance with the Federal Rules.

11

burden is on the defendant to prove an affirmative defense.  *See Bauer v. J.B. Hunt Transp.*, 150 F.3d 759, 763 (7th Cir. 1998). Yet once an affirmative defense is properly set forth in a responsive pleading, it is not waived before the trial court.  *See, e.g.*, *Mashal*, 981 N.E.2d at 970 (concerning statute of limitations defense raised on motion for summary judgment); *Massey v. United States*, 312 F.3d 272, 275 (7th Cir. 2002) (affirming grant of summary judgment on statute of limitations defense).

Defendants undoubtedly complied with the notice requirements here, raising the exhaustion issue in their motion to dismiss, Dkt. No. 34 at 1 n.1, their respective Answers, their written discovery, depositions, and the class certification briefing.  *See* Fed R. Civ. P. 8, Fed. R. Civ. P. 12(h)(2)(a) (legal defenses to claims are properly raised in, among other pleadings, answers); Dkt. Nos. 45, 130-1, 48, 46, 129, 47, 131.  Thus, absent extraordinary circumstances, the defense is preserved.

Defendants' preservation of their exhaustion of administrative remedies defense is no different than their preservation of other asserted defenses.  For example, Defendants also raised a statute of limitations affirmative defense in their Answers and Amended Answers.  There is no requirement that this defense should have been the subject of motion practice independent of summary judgment, and Plaintiffs do not contend otherwise.  Nor do Plaintiffs argue that Defendants somehow waived their statute of limitations defense by failing to raise it at some earlier time.  *See, e.g.*, *Mashal*, 981 N.E.2d at 970; *Massey*, 312 F.3d at 275.  Similarly, the manner in which Defendants litigated their exhaustion of administrative remedies affirmative defense was fully consistent with Illinois law and the Federal Rules of Civil Procedure.  *See, e.g.*, *Armstrong v. Resolution Trust Corp.*, 599 N.E.2d 1209 (Ill. App. Ct. 1992) (resolving exhaustion of administrative remedies defense on summary judgment).

12

Moreover, Plaintiffs concede that the administrative procedures in their municipal codes are designed, in part, as a protection for taxpayers.  Ex. F, 2/13/15 Tr. at 5.  Thus, the logic of the Seventh Circuit's *Fluker* case is analogous here.  There, a prisoner sued the County of Kankakee in federal court without first exhausting administrative remedies, in violation of the Prisoner Litigation Reform Act ("PLRA").  The "primary purpose" of the PLRA is to require prisoners to "alert the state" to any grievances and "invite corrective action" that could economize the resources of both the defendant and the court.  *Fluker*, 741 F.3d at 794 (*quoting Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013)).  Though the district court determined that the prisoner had not exhausted, it went on to consider the merits of the county's motion for summary judgment and dismissed the case with prejudice.  *Id.* at 790.  The plaintiff appealed, arguing that failure to exhaust required dismissal without prejudice and thus the court's consideration of the merits and dismissal with prejudice was improper.  *Id.* at 791.  The Seventh Circuit disagreed, writing, "[I]n the interests of judicial economy and finality, it made perfect sense for the district court to address the merits of the case" because "dismissing the case without prejudice on PLRA ground alone" would "not have done justice to any of the parties" or the district court.  *Id.* Accordingly, the Court affirmed the dismissal with prejudice.

Similarly here, exhaustion could be appropriately dealt with on summary judgment and need not result in a waste of the Court's or the parties' time.  Should the Court find for the Defendants on the merits, it would not be required to salvage the case for Plaintiffs because of their own failure to exhaust.  And any additional litigation required for Plaintiffs should they prevail on the merits would be entirely a burden of their own making.  For all of these reasons, Defendants have not waived their exhaustion defense.

## C.    Defendants' Exhaustion Affirmative Defense Is Meritorious

The Court has requested that Defendants demonstrate the viability of their exhaustion

defense. Dkt. 199. The defense is viable, and particularly strong for certain municipalities. For

example, § 3-18-4 of the Oak Lawn Municipal Code states, "[t]o collect overdue taxes, a

determination of tax liability notice *shall be sent to the taxpayer* by registered or certified mail

no more than four (4) years after the end of the calendar year when the tax was due[.]"

(emphasis added). Such tax liability notices "*shall include*" information such as "[t]he reason for

the tax liability" "the procedure for appeal" and "[t]he amount of tax, interest and penalty due on

the date of the determination and information on how interest and penalties accrue." Oak Lawn

Municipal Code § 3-18-4. The receipt of a determination of tax liability triggers a taxpayer's

ability to "seek a hearing before the tax administrator to appeal the tax liability" within 45 days,

or at any time before the current tax becomes due. *Id.* at § 3-18-5. Lombard, Orland Park, Burr

Ridge, and Tinley Park have similar ordinances. *See* Lombard Municipal Code § 98.110(D)

("To collect overdue taxes, a determination of tax liability notice *shall be sent to the taxpayer . . .

.*" (emphasis added)); *see also* Orland Park Municipal Code § 7-19-4 (using similar "shall"

language); Tinley Park Municipal Code § 41.07(b) ("The local tax administrator *shall send a

notice of determination and assessment of tax liability . . . .*" (emphasis added)); Burr Ridge

Municipal Code § 6-12-7(A) (same).[5] Certain absent class members have similar ordinances.

---

[5] Other named Plaintiffs' ordinances, while using "shall" language, are admittedly more
ambiguously mandatory on their face. For example, some ordinances state that "[t]he local
administrator shall send notice to a taxpayer upon the local tax administrator's issuance of a
protestable notice of tax due, a bill, a claim denial, or a notice of claim reduction regarding any
tax," which notice "shall include," *inter alia*, the reason for the tax assessment and the amount of
the tax liability proposed. *See, e.g.*, Arlington Heights Municipal Code § 7-808; Bedford Park
Municipal Code § 1-22-9; Des Plaines Municipal Code § 1-15-9; Oakbrook Terrace § 37.09;
Orland Hills Municipal Code § 33.148; Schaumburg Municipal Code § 36.168; Warrenville
Municipal Code § 3-16-9; Willowbrook Municipal Code § 11-6-8. However, those ordinances
merely presuppose that a taxing authority would issue a "protestable notice of tax due and
owing" if it believes that a party owes taxes that have not been paid. These ordinances were
passed pursuant to the The Local Government Taxpayers' Bill of Rights Act, which requires
procedures that "provid[e] all necessary due process rights in the collection and enforcement of

14

*See, e.g.*, Ex. H, Clarendon Hills § 47F.4; Elk Grove § 3-2-10(D); Mt. Prospect § 8.2004.

The Illinois Supreme Court has stated that when determining whether "the force of . . . statutory language is mandatory or permissive . . . 'shall' does usually indicate the legislature intended to impose a mandatory obligation." *People v. Robinson*, 838 N.E.2d 930, 936 (Ill. 2005); *see also People v. Ousley*, 919 N.E.2d 875, 885 (Ill. 2009) (holding that statute including the word "shall" is "not merely a grant of permission or suggestion, but rather has the force of a command that imposes an obligation"). Thus, under Illinois law, where a Plaintiff's ordinance states that the municipality "shall" send notice of unpaid taxes to a taxpayer "to collect overdue taxes," such notice is mandatory if the Plaintiff seeks a money judgment for overdue taxes. *See Ousley*, 919 N.E.2d at 885. Indeed, it makes perfect sense that the notice would be mandatory— as Plaintiffs admit, the administrative process that the notice sets in motion is designed in part to protect taxpayers. Ex. F, 2/13/15 Tr. at 5.

Plaintiffs did not contact any Defendant about the alleged deficiencies before filing this lawsuit, and the Complaint did not meet the statutory notice requirements. They have not fulfilled their own statutory preconditions to collecting allegedly owed taxes, and thus they should not be allowed "to collect overdue taxes" in this Court.

## CONCLUSION

Defendants respectfully request the Court find that (1) the exhaustion affirmative defense does not divest the Court of subject matter jurisdiction; (2) it has not been waived; and (3) it is viable and can be litigated should Plaintiffs move again to seek class certification.

---

local tax laws." 50 ILCS 45/5. It defies logic to suggest that ordinances passed pursuant to that directive were intentionally designed to allow a taxing authority to evade due process requirements by demanding taxes through some mechanism other than a protestable tax notice.

Dated: March 6, 2015

Respectfully submitted,

s/ Albert Lee Hogan, III

Albert Lee Hogan, III
SKADDEN ARPS SLATE MEAGHER &
FLOM, LLP
155 North Wacker Drive, Suite 2700
Chicago, IL 60606-1720
Telephone:    (312) 407-0700
ahogan@skadden.com

*Attorney for priceline.com Incorporated
(n/k/a The Priceline Group Inc.), pricline.com
LLC, Travelweb LLC*

s/ Mark P. Rotatori

Mark P. Rotatori
Nicole C. Henning
Meghan E. Sweeney
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL  60601-1692
Telephone:    (312) 269-4294
Facsimile:    (312) 782-8585
mprotatori@jonesday.com

*Attorney for Expedia, Inc. (WA), Hotels.com,
L.P., Egencia, LLC, Hotwire, Inc.*

s/ Elizabeth B. Herrington

Elizabeth B. Herrington
Jeffrey A. Rossman
Mark J. Altschul
McDERMOTT WILL & EMERY
227 West Monroe Street
Chicago, IL 60606-5096
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700

*Attorneys for Orbitz, LLC, Trip Network, Inc.,
Internetwork Publishing Corp. (d/b/a
Lodging.com)*

s/ Brian S. Stagner

Brian S. Stagner
KELLY HART & HALLMAN LLP
201 Main Street
Suite 2500
Fort Worth, TX 76102
Telephone:    (817) 878-3567
brian.stagner@kellyhart.com

s/ Luke DeGrand

Luke DeGrand
Tracey L. Wolfe
DEGRAND & WOLFE, P.C.
20 South Clark Street, Suite 2620
Chicago, Illinois 60603
Telephone:  (312) 236-9200
ldegrand@DeGrandWolfe.com
twolfe@DeGrandWolfe.com

*Attorneys for Travelocity.com LP, Site59.com,
LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 6, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.


s/ Mark P. Rotatori
_____
Mark P. Rotatori

*Attorney for Expedia, Inc. (WA), Hotels.com, L.P., Egencia, LLC, Hotwire, Inc.*