IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **VILLAGE OF BEDFORD PARK, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 13 C 5633** |
| ) | |
| **EXPEDIA, INC. (WA), et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Fourteen Illinois municipalities, on behalf of a putative class of 154 municipalities, have sued a number of online travel companies for unpaid taxes. The plaintiffs allege that the defendants failed to remit taxes owed under their municipal hotel tax ordinances. Defendants removed the case to federal court on the basis of the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) & 1453. In October 2014, plaintiffs moved to certify a class of 276 municipalities under Federal Rule of Civil Procedure 23(b)(1) & (b)(3). The Court denied that motion without prejudice to renewal. Plaintiffs have now moved to certify a class of 154 municipalities under Rule 23(b)(3) only. For the reasons stated below, the Court denies the motion.

### Background

The Court assumes familiarity with the plaintiffs' allegations in this case and will summarize them only briefly here. A more detailed recounting of the plaintiffs' allegations can be found in the Court's March 13, 2014 decision on defendants' motion

to dismiss.  *See Vill. of Bedford Park v. Expedia, Inc.*, No. 13 C 5633, 2014 WL 983129 (N.D. Ill. March 13, 2014).

The named plaintiffs are fourteen municipalities in Illinois.  Each has imposed a tax on the rental of hotel rooms within its borders.  Plaintiffs group these hotel tax ordinances into five categories based on who and what is taxed in the ordinance. Plaintiffs offer these five groups as possible subclasses.

The defendants are online travel companies.  Defendants contract with individual hotels and pay wholesale rates for rooms at those hotels; defendants then rent the rooms directly to the public for a higher retail price.  The price defendants charge customers includes the wholesale rate, a facilitation fee, and an amount labeled "Taxes & Services," which consists of an estimate of the hotel tax due and other service costs. After these customers complete their stays at the hotels, the hotels bill defendants for the wholesale rate and a tax based on the wholesale rate.  Defendants then pay the hotels.

Plaintiffs claim that their hotel tax ordinances apply to the retail rate charged to customers, not just the wholesale rate.  They allege, therefore, that the defendants have failed to remit taxes owed under the hotel tax ordinances.

In September 2013, defendants moved to dismiss seven of the ten claims in plaintiffs' complaint for failure to state a claim.  The Court granted defendants' motion.

Plaintiffs moved to certify a class of 276 municipalities in October 2014.  The Court denied that motion without prejudice to renewal.  In that decision, the Court noted that it was unpersuaded by plaintiffs' arguments that the issue of administrative exhaustion did not preclude class certification.  See *Vill. of Bedford Park v. Expedia,*

*Inc.*, No. 13 C 5633, 2015 WL 94851, at *9 (N.D. Ill. Jan. 6, 2015). The Court did not rule on the merits of the exhaustion issue, however, because it had already denied class certification on other grounds.

Plaintiffs then moved to clarify whether the Court had decided the exhaustion defense on the merits. The Court denied that motion as well, saying (again) that it had not decided the merits of the issue. However, because plaintiffs indicated that their decision to re-move for class certification would turn on the viability of the exhaustion defense, the Court ordered briefing on this issue. In June 2015, after considering plaintiffs' new arguments against the exhaustion defense, the Court held that it was not viable as to the named plaintiffs.

Plaintiffs have now moved to certify a class of 154 municipalities.

## Discussion

A party seeking class certification must "affirmatively demonstrate [ ] compliance" with the requirements of Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Rule 23(a) requires the party seeking certification to demonstrate that the class is so numerous that joinder of all members is impracticable (numerosity); there are questions of law or fact common to the proposed class (commonality); the class representatives' claims are typical of the claims of the class (typicality); and the representative will fairly and adequately represent the interests of the class (adequacy). The party must also establish that the proposed class falls within at least one of the three categories in Rule 23(b).

In this case, plaintiffs seek certification under Rule 23(b)(3). Rule 23(b)(3) permits class certification if "questions of law or fact common to class members

3

predominate over any questions affecting only individual members" (predominance) and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority).  For the reasons stated below, the Court concludes that Rule 23(b)(3) is not satisfied.  Because these issues are dispositive, the Court need not address defendants' other arguments, though the Court will briefly address commonality and "ascertainability" at the conclusion of this opinion.

## A.     Predominance and Superiority

### 1.     Predominance

Under Rule 23(b)(3), plaintiffs must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  The predominance criterion "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted).  This is "far more demanding" than Rule 23(a)'s commonality requirement, under which a plaintiff need only establish that a single common question exists.  *Id.* at 623-24.  That said, the predominance inquiry is "a qualitative assessment" and is not akin to "bean counting" or "counting noses."  *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013).  To satisfy the predominance requirement, plaintiffs need not show "common results for members of the class" in addition to "common evidence and methodology."  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 819 (7th Cir. 2012).

In assessing whether a party seeking class certification has satisfied Rule 23's requirements, the Court may consider merits questions "to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are

satisfied." *Bell v. PNC Bank, Nat. Ass'n*, No. 14-3018, 2015 WL 5093052, at *13 (7th Cir. Aug. 31, 2015) (citing *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1193-94 (2013). But plaintiffs "need not . . . prove that the predominating question will be answered in their favor." *Amgen*, 133 S. Ct. at 1196     .

Plaintiffs have moved to certify a class of 154 municipalities, each of which has its own hotel tax ordinance. When a proposed class spans multiple jurisdictions, as here, variations in the applicable law across the jurisdictions may "swamp any common issues and defeat predominance." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1261 (11th Cir. 2004); *see also* 1 McLaughlin on Class Actions § 5:46 (11th ed. 2014) (observing that "recent case law is legion holding that variances—and 'even nuances'—in the substantive law of the states precludes certification of nationwide or multi-state litigation classes alleging state law claims"); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 126-27 (2d Cir. 2013) ("[P]utative class actions involving the laws of multiple [jurisdictions] are often not properly certified pursuant to Rule 23(b)(3) because variation in the legal issues to be addressed overwhelms the issues common to the class."). If the applicable laws "can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate." *Klay*, 382 F.3d at 1262. "The burden of showing uniformity or the existence of only a small number of applicable standards," however, "rests squarely with the plaintiffs." *Id.* (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986)); *see also Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004) ("The plaintiffs have the burden of showing that common questions of law predominate, and they cannot meet this burden when the

various laws have not been identified and compared.").

Plaintiffs failed to meet this burden on their first motion for class certification. The Court found that "the ordinances var[ied] widely within the proposed subclasses" as to "who" and "what" was taxed, "and thus could impose different legal obligations." *Vill. of Bedford Park*, 2015 WL 94851, at *5. Although the Court acknowledged that "some of the ordinances contain the same or similar language," it advised plaintiffs that they "must show more" than this for class certification. *Id.* Specifically, the Court explained, plaintiffs "must establish that these ordinances can be arranged into a manageable number of groups containing materially identical legal standards." *Id.* In other words, plaintiffs could not carry their burden simply by grouping ordinances with similar wording; they must show—by citation to case law or some other means—that the similarly-worded ordinances set materially identical legal standards.

In their current motion for class certification, plaintiffs attempt to remedy these deficiencies by redefining the subclasses. In so doing, plaintiffs have decreased the total class size from 276 to 154 class members. On the surface, the new subclasses appear more cohesive than those proposed in the previous motion. Every ordinance in the first proposed subclass imposes the tax on "all persons engaged in the business of renting, leasing or letting" rooms in a hotel; every ordinance in the second subclass imposes a tax on every "operator" of a hotel; every ordinance in the third subclass imposes a tax on all "owner, manager or operator" of a hotel; every ordinance in the fourth subclass imposes a tax on every "owner and operator and the person licensed to operate any hotel'"; and every ordinance in the fifth subclass imposes a tax on every "owner" of a hotel. The new proposed subclasses are more cohesive with regard to

"what" the ordinances tax as well (with one exception, as will be discussed in greater detail below).

Defendants argue that despite these apparent similarities, that individual issues will predominate over common ones. To begin, defendants contend that "any statutory construction analysis" to determine whether the ordinances set materially identical legal standards "requires an inquiry into whether any relevant amendments have been enacted over time." Defs.' Resp. to Pls.' Second Mot. for Class Certification at 11. Thus, they argue, even if plaintiffs show that the ordinances have similar wording, the Court would still have to analyze each ordinance individually, first to determine which of the ordinances were amended during the damages period, and then to decide whether a given amendment changed the ordinance in a material way.

This concern is not hypothetical. In response to plaintiffs' first motion for class certification, defendants observed that both Evanston and Rolling Meadows had amended their ordinances in 2013. Evanston publicly acknowledged that the amendment, which revised the ordinance's definition of "operator," was intended to "clear up any ambiguity" regarding whether online travel companies owed the hotel tax—an important acknowledgment, defendants noted, as "any ambiguity in the tax ordinances would be construed in favor of a taxpayer." Defs.' Resp. to Pls.' First Mot. for Class Certification at 17. Thus, defendants argued, these amendments threatened to create "mini trials" on whether each ordinance had "undergone changes over the asserted fifteen year damages period." *Id.* at 17-18.

The Court did not address this particular point in its decision on plaintiffs' first motion for class certification. Even so, plaintiffs appear to have recognized that the

argument had force: in their current motion for class certification, plaintiffs have dropped both Evanston and Rolling Meadows from the proposed class. But this is not necessarily a fix. If the proposed class contains other municipalities that amended their ordinances during the damages period, the task of construing each of these ordinances could predominate over common issues.

Defendants home in on Oakbrook Terrace, one of the named plaintiffs. Oakbrook Terrace imposes a tax on every "owner and operator" of a hotel. Through documents produced in discovery, defendants learned that Oakbrook Terrace amended its ordinance in December 2011 "to expand the duty to collect [the tax] to those person or entities which receive consideration for the rental of a hotel or motel room within the City." Defs.' Resp. to Pls.' Second Mot. for Class Certification, Ex. L. The ordinance now reads, "The owner and operator of each hotel, *persons or entities which receive consideration for the rental of a hotel room* and the person to whom the license to operate said hotel shall have been issued by the city, shall bear . . . the duty to collect the tax from each user, lessee or tenant of rooms in such hotel." Oakbrook Terrace, Ill., Code § 35.022 (emphasis added).

This amendment was adopted to incorporate lessons learned from an earlier case in this district, *Village of Rosemont v. Priceline.com Inc.*, No. 09 C 4438, 2011 WL 4913262 (N.D. Ill. Oct. 14, 2011). There, Judge Guzman was asked to decide whether the term "owner" in Rosemont's ordinance encompassed online travel companies. *Id.* at *2. Unlike Oakbrook Terrace's ordinance, which does not define "owner," Rosemont's ordinance defines "owner" as "any person (a) having an ownership interest in a hotel, (b) conducting the operation of a hotel, or (c) receiving the consideration for the rental of

8

such hotel or motel room." *Id.* (internal quotation marks omitted). The parties in *Village of Rosemont* agreed that online travel companies did not "have an ownership interest in or conduct the operations of the hotels with which they do business." *Id.* They disagreed, however, about whether online travel companies received consideration for the rental of hotel rooms. Judge Guzman concluded that the defendants were owners in this sense because "[t]he bargain struck [in these transactions] is the payment of money for access to a hotel room, which occurs between [the online travel companies] and the customers." *Id.* at *3.

In November 2011, Oakbrook Terrace city council met to discuss "recapture of the hotel taxes collected by online serve providers." Defs.' Resp. to Pls.' Second Mot. for Class Certification, Ex. L. The meeting minutes specifically reference Judge Guzman's decision in *Rosemont*, observing that he "ruled in favor of . . . Rosemont because [its] ordinance requires the hotel owners and operators as well as anyone who rents a hotel room for consideration to collect the tax." *Id.* By contrast, the minutes say, Oakbrook Terrace's ordinance "currently only requires the hotel owners and operators to collect the tax." *Id.* Thus, unlike Rosemont, it does not appear that Oakbrook Terrace interpreted the term "owner" to include "persons or entities which receive consideration for the rental of a hotel room." If it had, amendment of its ordinance would have been unnecessary.

Plaintiffs provided the amended version of Oakbrook Terrace's ordinance in their submissions to the Court. They did not indicate that they were providing this version instead of the version that was in effect during the damages period. Additionally, after defendants raised the issue, plaintiffs did not explain how the ordinance should be

construed in light of the amendment.  Rather, they argue that "it will be [p]laintiffs' burden to establish the particular time period(s) for which a local hotel tax ordinance fits within a particular subclass."  Pls.' Reply in Supp. of Second Mot. for Class Certification at 5.  Thus, plaintiffs essentially say that the Court should reserve decision on this issue—whether the ordinances were amended and whether these amendments were material—for a later time.

Despite plaintiffs' suggestion, the Court does not believe that it can kick the can down the road.  To prevail on the present motion, plaintiffs have the burden of establishing that the ordinances in each subclass do, in fact, set materially identical legal standards.  If many of the class members enacted amendments to their ordinances during the damages period,[1] as Oakbrook Terrace did, then the subclasses cease to be workable groupings of the class members—even if the most recent versions of the ordinances are materially identical.  In addition, the magnitude of this problem is unlikely to become clear until after class discovery is completed; defendants only learned of Oakbrook Terrace's amendment because discovery has commenced regarding the named class members.

This problem spans all five subclasses and is sufficient to require denial of class certification.  It not only threatens to undermine subclass cohesion but also would demand ordinance-by-ordinance review to determine the nature and effect of the

---

[1] Although plaintiffs submitted the text of the ordinances, they did not provide information on the number of ordinances that have been amended during the fifteen-year damages period.  Some of the ordinances note amendments in their text, and it appears that a number of the ordinances were amended in just the last few years. Bolingbrook, Galesburg, and Skokie amended their ordinances in 2014; Beecher, Creve Coeur, Park City, and Prospect Heights amended their ordinances in 2012; and Byron and Mascoutah amended their ordinances in 2011.

amendments.  If the Court must interpret a large number of the ordinances individually, those inquiries likely would "swamp any common issues and defeat predominance." *Klay*, 382 F.3d at 1261.

Oakbrook Terrace's amendment points to an additional problem with the term "owner," which is used in the ordinances of the municipalities in the third, fourth, and fifth proposed subclasses.  Of the 78 ordinances that tax the "owner," only 32 of the ordinances define this term.  With a few exceptions, these 32 ordinances define "owner" as "any person having a sufficient proprietary interest in conducting the operation of a hotel or motel room or receiving the consideration for the rental of such hotel or motel room, so as to entitle such person to all or a portion of the net receipts thereof."  Pls.' Second Mot. for Class Certification at 13.  Plaintiffs argue that this is the "prevailing definition" of "owner."  *Id.*  They contend that the Court may read this definition into the 46 ordinances that do not define this term.

If this definition was in fact the prevailing one, then Oakbrook Terrace's amendment would have been unnecessary.  But as that municipality's city council minutes make clear, Oakbrook Terrace did not interpret "owner" in its ordinance to encompass "persons or entities which receive consideration for the rental of a hotel room."  Accordingly, the ordinances that do not define "owner" may very well set different legal standards from those that do.  Indeed, the dictionary definition indicates that "ownership" does not typically include mere receipt of consideration.  *See* Black's Law Dictionary (9th ed. 2009) (defining "ownership" as "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others");  *United States v. Patel*, 778 F.3d 607, 613 (7th Cir. 2015) (dictionary definitions are often

used to determine the plain meaning of undefined statutory terms ).

Plaintiffs fail to grapple with this argument.  They do not argue that Oakbrook Terrace's ordinance is distinct from the other ordinances that do not define "owner." They also do not point to instances in which the term has been interpreted as they suggest (except, of course, where the ordinance expressly defines the term).  Their only argument is that many of ordinances—about forty percent of the class members' ordinances—define the term in this way.  That is not enough to carry plaintiffs' burden in the present circumstances.  As shown by Oakbrook Terrace's ordinance, those municipalities that did not define "owner" could have intended a different meaning. Ordinance-by-ordinance analysis would be required.

The same goes for the three subclasses with ordinances that tax the "operator" of a hotel.  Out of the 74 ordinances that tax the "operator," only 25 of the ordinances define this term.  With regard to the 49 ordinances that do not define this term, plaintiffs argue that the Court should apply the definition of "operator" from the Illinois Hotel Operators' Occupation Tax.  *See* 35 ILCS 145/2.  This suggestion is not entirely unreasonable; many of the ordinances either use that definition or incorporate parts of that statute by reference.  But as discussed in the Court's decision on plaintiffs' first motion, some ordinances define "operator" quite differently:

> Crystal Lake's ordinance defines the term "operator" as "[t]he person who
> is proprietor of the hotel, whether in the capacity of owner, lessee,
> sublessee, mortgagee in possession, licensee, or any other capacity."
> Crystal Lake, Ill., Code § 467–38 (1993).  Oak Forest's ordinance, by
> contrast, defines operator as "[a]ny person conducting the operation of a
> hotel accommodation or receiving consideration for the rental or lease of a
> hotel accommodation, including, but not limited to, the owner or manager
> of a hotel accommodation."  Oak Forest, Ill., Code § 117.15 (2000).

*Id.* at *5.  These alternative definitions create ambiguity regarding which definition the

49 municipalities whose ordinances do not define "operator" intended to employ. Additionally, many of these same ordinances define other terms. *See, e.g.*, New Lenox, Ill., Code § 82-31 (2013) (defining "hotel and motel," "owner," "permanent resident," and "person," but not defining "operator"). It could be argued that by omitting a definition of "operator," these municipalities were signaling that a dictionary definition should be used. *See Gruszeczka v. Ill. Workers' Comp. Comm'n*, 2013 IL 114212, ¶ 12, 992 N.E.2d 1234, 1237-38 ("Each undefined word in the statute must be given its ordinary and popularly understood meaning."); *Patel*, 778 F.3d at 613 (use of dictionary definitions to determine the plain meaning of undefined statutory terms ). If so, this definition could be materially different from the Illinois code's definition. *See, e.g.*, Merriam-Webster Dictionary (2015) (defining operator as "a person who uses and controls something").

Plaintiffs have not pointed to case law or other authority indicating that the Illinois code is generally understood to be the default source for definitions of terms used in a local ordinance. Indeed, they have not even cited to a case in which a local ordinance was construed using an Illinois code definition.[2] The Court's own research on how

---

[2] Plaintiffs cite three cases. The first two did not involve a local ordinance. *See People v. Jones*, 214 Ill. 2d 187, 824 N.E.2d 239 (2005); *Christ Hosp. & Med. Ctr. v. Ill. Comprehensive Health Ins. Plan*, 295 Ill. App. 3d 956, 693 N.E.2d 1237 (1998). The third involved a local ordinance, but it stands for the contrary proposition. *See Lake Cty. v. Gateway Houses Found., Inc.*, 19 Ill. App. 3d 318, 325, 311 N.E.2d 371, 377 (1974) (concluding that the doctrine of *in pari materia* did not apply because "the Drug Addiction Act and the Lake County Zoning Ordinance . . . were passed on different dates and by different legislative bodies"); *see also id.* ("If the meanings in the [s]tate law were intended to apply the [c]ounty should have made reference to the Drug Addiction Act or included a similar definition in the amendment to the ordinance. Without the ordinance indicating otherwise, a property owner should be able to rely on the terms used in the zoning ordinance meaning what they are commonly understood to mean.").

Illinois courts interpret undefined terms in local ordinances—the research that plaintiffs and defendants should have done, given the importance of this point—indicates that Illinois courts do not apply definitions from the Illinois code as a matter of course. Illinois courts sometimes rely on the Illinois code as persuasive authority regarding the meaning of local ordinances. *See Lake Cty. v. Zenko*, 174 Ill. App. 3d 54, 64-65, 528 N.E.2d 414, 420-21 (1988) (acknowledging that the Illinois code's definition of "junk yard" supported one party's interpretation of an ordinance, but stating that the two statutes were not *in pari materia*); *Nolan v. City of Granite City*, 162 Ill. App. 3d 187, 191-92, 514 N.E.2d 1196, 1200 (1987) (noting that the Illinois Pension Code's definition of "retirement" supported the court's interpretation of an ordinance). More often, however, Illinois courts decline to read Illinois code definitions into local ordinances. *See Montano v. City of Chicago*, 308 Ill. App. 3d 618, 622-23, 720 N.E.2d 628, 632 (1999) ("We cannot use definitions in the Illinois Vehicle Code to construe the terms of an ordinance in the Chicago Municipal Code."); *Resman v. Pers. Bd. of City of Chicago*, 96 Ill. App. 3d 919, 922, 422 N.E.2d 120, 122 (1981) ("Clearly, the principle of *in pari materia* can have no application to the instant case, since the intent of the Chicago City Council in enacting [the ordinance] cannot be divined by resort to a statute passed by the Illinois legislature."); *Mandarino v. Vill. of Lombard*, 92 Ill. App. 3d 78, 82-83, 414 N.E.2d 508, 511 (1980) ("[T]he present case involves conflicting provisions between two separate sources of law, the Lombard Village Code and the [Illinois] Municipal Code. . . . We therefore conclude that the doctrine of *in pari materia* is inapplicable in the instant case."); *Pioneer Trust & Sav. Bank v. Cook Cty.*, 71 Ill. 2d 510, 520-22, 377 N.E.2d 21, 25-26 (1978) ("[W]e are not convinced the zoning ordinance manifestly

intended incorporation of the statutory definition. . . . [T]he drafters of the zoning ordinance failed to include any language referring to or incorporating statutory definitions . . . .").  Additionally, the Illinois Supreme Court has expressed caution about "importing definitions from other statutes," because "the context in which a term is used obviously bears upon its intended meaning."  *People ex rel. Ill. Dep't of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 29, 4 N.E.3d 1, 7-8.  "Even when two statutes share nearly identical definitions," the court noted, "there can be critical differences in context, or limiting language elsewhere in one statute, that qualifies the term in question."  *Id.*

Plaintiffs argue that use of the Illinois code's definition is appropriate because "[a]ll non-home rule municipalities in Illinois derive their power to tax hotel rooms directly from [two enabling statutes,]" and these enabling statutes "specifically reference the Hotel Operators' Occupation Tax Act" and "adopt the definition of 'hotel' provided therein."  Pls.' Reply in Supp. of Second Mot. for Class Certification at 4.  The Court is not persuaded by plaintiffs' argument.  Although the enabling statutes incorporate the Illinois code's definition of "hotel," they do not incorporate its definition of "operator."  It therefore appears that non-home rule municipalities are free to define this term as they see fit, and plaintiffs do no argue otherwise.  Moreover, plaintiffs concede that "home rule municipalities . . . do not derive their power to enact taxes from [the enabling statutes]," and "may craft an ordinance that does not utilize the definitions contained in [the enabling statutes]."  *Id.*  Thus, even if it is reasonable to infer that non-home rule municipalities intended the Illinois code definition, the same inference does not apply to home rule municipalities.  For these class members, the Court would need to evaluate each ordinance individually to determine whether the Illinois code definition is

appropriate.  Plaintiffs have not identified which of the class members are home rule and which are non-home rule.  Absent a showing that the number of non-home rule municipalities is far greater than the number of home rule municipalities, common questions would not predominate.

The Court notes two other problems with the new proposed subclasses.   The first subclass is composed of municipalities with ordinances that impose a tax on "all persons engaged in the business of renting, leasing or letting" rooms in a hotel.   But as defendants point out, even though the ordinances all say that the tax applies to persons engaged in the business of renting hotel rooms, about half of the ordinances contain tax-return provisions suggesting that "operators" are responsible for collecting the tax. *See, e.g.*, Arcola, Ill., Code § 21-6-7 ("In his return, the operator shall determine the value of any consideration other than money received by him in connection with the renting, leasing or letting of rooms in the course of his business and he shall include such value in his return.").  Eleven others expressly define who is taxed by reference to the Illinois Hotel Operators' Occupation Tax.[3]  The remaining sixteen do not mention operators or define who is taxed by reference to the Illinois Hotel Operators' Occupation Tax.[4]  It may be that the ordinances set the same legal standard, despite this variation. But the Court would have to interpret many, if not all, of the ordinances individually to reach this determination.

Lastly, the Court is concerned about variation regarding what is taxed in the fifth

---

[3] These municipalities are Beecher, Carlinville, Clinton, Farmer City, Litchfield, Machesney Park, Mahomet, Milan, Pontiac, Rockford, and Streator.

[4] These municipalities are Byron, Carlyle, Carol Stream, Cherry Valley, Clarendon Hills, Country Club Hills, Darien, Freeport, Glen Ellyn, Highwood, Lake Forest, Loves Park, Prospect Heights, Roscoe, Willowbrook, and Woodridge

proposed subclass. Most of the ordinances tax "rent charged for the privilege and use of renting a hotel or motel room." Bedford Park and Stickney tax the "one night room charge for the use and privilege of a room at any hotel, motel or other similar lodging facility." Bedford Park, Ill., Code § 5-19-1; Stickney, Ill., Code § 78-311. South Holland and Wheaton impose a tax on the "room rental rate," which does not include "taxes or other non-room rental charges added to the motel or hotel bill." South Holland, Ill., Code § 18-19(a); Wheaton, Ill., Code § 66-147(a). Metropolis defines "rent" as the "gross cash proceeds or other consideration paid and received in return for the privilege and use of occupying and renting a hotel or motel room." Metropolis, Ill., Code § 35.46. Although plaintiffs assert that each of these phrases imposes a tax upon the retail room rate, they do not provide a legal argument for why this is so.

In summary, plaintiffs have failed to establish that the ordinances in each of the subclasses set materially identical legal standards. Ordinances across all five of the subclasses have been amended during the damages period. As seen in Oakbrook Terrace, these amendments may have effected material changes to those ordinances. Additionally, over half of the ordinances do not define "operator" (those in the second, third, and fourth subclasses) or "owner" (those in the third, fourth, and fifth subclasses); ordinances in the first subclass vary as to whether the operator collects the tax and whether the Illinois Hotel Operators' Occupation Tax is incorporated by reference; and ordinances in the fifth subclass vary as to "what" is taxed. This variation threatens to undermine the cohesion of the subclasses. And even if this variation can be reconciled, to reach this conclusion, the Court would need to interpret many of the ordinances individually. Plaintiffs have not persuaded the Court in their briefing on the

present motion that the shortcuts they propose—such as importing definitions from the Illinois code—are proper.  Thus, based on the present record, plaintiffs have failed to establish that common questions would predominate over individual questions.

### 2.    Superiority

Under Rule 23(b)(3), plaintiffs must also demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating" the controversy.  This requirement, along with the predominance requirement, is intended "to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem Prods., Inc.*, 521 U.S. at 615 (internal quotation marks and alterations omitted).  Plaintiffs contend that class treatment is a superior vehicle for their claims because "[g]iven the subject 154 municipalities' common claims and issues regarding collection of local accommodations taxes on the retail rate of sale, requiring them to file a multitude of individual lawsuits against the [online travel companies] in jurisdictions throughout Illinois does not serve the interests of Illinois' municipalities, courts, or taxpayers."  Pls.' Second Mot. for Class Certification at 15.   They also assert that "certain municipalities may not be able to afford litigation" and that separate actions "risks disparate and inconsistent legal rulings."  *Id.*  Defendants argue, in turn, that "the vast differences in ordinance language will render it not manageable as a class action."  Defs.' Resp. to Pls.' Second Mot. for Class Certification at 12.

As discussed in the previous section, plaintiffs have failed to demonstrate that the 154 different ordinances can be arranged into a modest number of subclasses with

materially identical legal standards.  Absent this showing, certifying this case as a class

action would present significant manageability problems.  *See In re*

*Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (holding that because

the plaintiffs "claims must be adjudicated under the law of so many jurisdictions," a

class action would not be manageable).

**B.      Defendants' commonality and ascertainability arguments**

The Court has already concluded that Rule 23's predominance and superiority

requirements are not satisfied.   It thus need not address defendants' commonality and

ascertainability arguments.   To ensure a complete record, however, the Court will

discuss these issues.  This discussion should not be read to imply that the

predominance and superiority problems can be surmounted.

**1.      Commonality**

Rule 23(a)(2) requires the party seeking certification to demonstrate that there

are questions of law or fact common to the proposed class.  To establish commonality,

a plaintiff must demonstrate that the class members' claims depend upon a common

contention that is capable of class-wide resolution, "which means that determination of

its truth or falsity will resolve an issue that is central to the validity of each one of the

claims in one stroke." *Wal–Mart*, 131 S. Ct. at 2551.  In this inquiry, "even a single

common question will do."  *Id.* at 2556 (internal alterations and quotation marks

omitted).  Relying on the Supreme Court's decision in *Wal-Mart*, the Seventh Circuit has

explained that plaintiffs must show "that they share some question of law or fact that

can be answered *all at once* and that the *single answer* to that question will resolve a

central issue in all class members' claims." *Jamie S. v. Milwaukee Pub. Schs.*, 668

F.3d 481, 497 (7th Cir. 2012). Superficial common questions, such as "whether each class member 'suffered a violation of the same provision of law'—are not enough." *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2551).

In *Wal-Mart*, an employment discrimination suit, the commonality requirement was not satisfied because "[t]he only corporate policy that the plaintiffs' evidence convincingly establishe[d] [was] Wal-Mart's 'policy' of allowing discretion by local supervisors over employment matters." *Wal-Mart*, 131 S. Ct. at 2554. As the Court noted, "[o]n its face, of course, that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy against having uniform employment practices." *Id.* Accordingly, "[w]ithout some glue holding the alleged reasons for all those decisions together, it [would] be impossible to say that examination of all the class members' claims for relief [would] produce a common answer to the crucial question *why was I disfavored*." *Id.* at 2552. Importantly, however, the Court in *Wal-Mart* did not hold that the answer to the common question must resolve in a single fell swoop whether the defendant is liable; rather, the Court held that the common question must "resolve *an issue that is central* to" whether the defendant is liable. *Wal-Mart*, 131 S. Ct. at 2551 (emphasis added).

In its decision on the first motion for class certification, the Court held that one of plaintiffs' proposed common questions satisfied the commonality requirement: whether the defendants had a corporate policy against remitting taxes on the retail room rate charged to consumers. *See Vill. of Bedford Park*, 2015 WL 94851, at *3. Unlike the corporate policy in *Wal-Mart*, the Court noted,

> this actually could be a uniform policy—plaintiffs allege that the
> defendants uniformly failed to pay taxes on the retail room rate. And the

answer to this question is central to the validity of their claims: if defendants had this policy, then they would be liable under any hotel tax ordinance that taxed the retail rather than the wholesale room rate; if defendants did not have this policy—if they did, in fact, remit the taxes— then they would not be liable.

*Id.* Thus, the Court concluded, "the question generates an answer that is apt to drive the resolution of the litigation, even if, in the end, certain of the plaintiffs might not be able to prevail under their respective ordinances." *Id.*

In the first motion for class certification, defendants' main argument against commonality was that plaintiffs had "not identified any common question that when answered, would simultaneously determine Defendants' liability, if any, to all class members." Defs.' Resp. to Pls.' First Mot. for Class Certification at 8. As the Court noted, however, defendants overstated plaintiffs' burden. *See Wal-Mart*, 131 S. Ct. at 2551 (holding only that the common question must "resolve *an issue that is central* to" whether the defendant is liable) (emphasis added). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014); *see also Sullivan v. DB Invs., Inc.*, 667 F. 3d 273, 299 (3d Cir. 2011) (observing that *Wal-Mart* "mak[es] clear that the focus is on whether the defendant's conduct was common as to all of the class members, not on whether each plaintiff has a 'colorable' claim," and "commonality is satisfied where common questions generate common answers apt to drive the resolution of the litigation" (internal quotation marks omitted)).

Defendants have now asked the Court to reconsider its ruling, arguing that they "have never disputed that they did not remit taxes on their compensation to any of the

putative class members."  Defs.' Resp. to Pls.' Mot. for Class Certification at 14.[5]

"Whether that was due to a policy . . . or individualized decision-making," defendants

add, "does not alter the outcome of the case."  *Id.* at 14-15.

The latter point is well taken.  Unlike discrimination cases, which may require a

company policy to establish liability on a class-wide basis, tax cases often do not

require a policy of this kind; a party that fails to remit taxes is typically liable whether it

acted accidentally or intentionally.  Thus, the common question is more appropriately

phrased as follows:  Whether defendants failed to remit taxes on the retail room rate

charged to consumers.  The key point is that plaintiffs allege that "the same conduct or

practice"—failure to remit taxes on the retail room rate—"[gave] rise to the same kind of

claims from all class members"—claims for unpaid taxes.  *Suchanek*, 764 F.3d at 756.

But although it is true that defendants have not disputed this conduct (i.e. they

have not argued that they remitted the taxes), that has no bearing on commonality.  A

common question that is conceded by a defendant remains a common question.

## 2.    Ascertainability

The Seventh Circuit has "long recognized an implicit requirement under Rule 23

that a class must be defined clearly and that membership be defined by objective

criteria rather than by, for example, a class member's state of mind."  *Mullins v. Direct

Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015).  "In addressing this requirement, courts

---

[5] Defendants also argue that plaintiffs have no evidence of a corporate policy.  Although
the Court may peek at the merits "to the extent . . . that they are relevant to determining
whether the Rule 23 prerequisites for class certification are satisfied."  *Bell*, 2015 WL
5093052, at *13, this merits inquiry would go too far.  In any event, plaintiffs have
identified evidence of a corporate policy.  Pls.' Reply in Supp. of Second Mot. for Class
Certification at 12-13.

have sometimes used the term 'ascertainability,'" and "[c]lass definitions have failed this requirement when they were too vague or subjective, or when class membership was defined in terms of success on the merits (so-called 'fail-safe' classes)."  *Id.*  However, plaintiffs need not "prove at the certification stage that there is a reliable and administratively feasible way to identify all who fall within the class definition."  *Id.*

Defendants argue that the class definition creates a "fail-safe" class in which "class membership [is] defined in terms of success on the merits."  *Mullins*, 2015 WL 4546159, at *1.  Plaintiffs have proposed the following class definition:

> All Illinois municipalities (excluding Chicago, Fairview Heights, and Rosemont) that have enacted and collect a tax on the percentage of the *retail rate* that each consumer occupant pays for lodging, *including service costs*, denominated in any manner, including but not limited to, occupancy tax, a hotel or motel room tax, a use tax, a privilege tax, a hotel or motel tax, a licensing tax, an accommodations tax, a rental receipts tax, a hotel operator's tax, a hotel operator's occupation tax, or a room rental, lease or letting tax.

Defendants argue that this is a fail-safe class because it "poses the exact question that the Court will need to decide in this case."  Defs.' Resp. to Pls.' Second Mot. for Class Certification.  Specifically, defendants say, plaintiffs define the class to include all municipalities that have enacted ordinances that tax the retail rate rather than the net rate.  But this alone does not define the class in terms of success on the merits; even if a given ordinance taxes the retail rate, defendants may not be liable (for example, if the ordinance does not define the term "operator" or "owner" to include online travel companies).  Thus, although this determination "goes to the heart of the claims," it is "not a proscribed fail-safe class" because it does not "include[] only those who are entitled to relief."  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012).

Defendants also note "that five of the named plaintiffs and 117 municipalities (122 in total) that [plaintiffs] previously argued were encompassed in the class definition do not fit within the subclasses." Defs.' Resp. to Pls.' Second Mot. for Class Certification at 17. Thus, they argue, the class definition is vague as to whether these municipalities are included in the class; the class definition suggests that they are, but the subclass definitions suggest that they are not. This vagueness may be a flaw in the class definition. If so, however, the solution would not be to deny certification, as defendants suggest. Rather, when a class definition is not ascertainable, a court should "refin[e] the class definition rather than [ ] flatly deny[] class certification on that basis." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). Had plaintiffs' proposed class met the other Rule 23 requirements, the Court would have done this.

## Conclusion

For the foregoing reasons, the Court denies plaintiffs' motion for class certification [dkt. no. 220]. The case is set for a status hearing on October 13, 2015 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 28, 2015