**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **VILLAGE OF BEDFORD PARK, CITY OF WARRENVILLE, CITY OF OAKBROOK TERRACE, VILLAGE OF OAK LAWN, VILLAGE OF ORLAND HILLS, CITY OF ROCKFORD, VILLAGE OF WILLOWBROOK, VILLAGE OF ARLINGTON HEIGHTS, VILLAGE OF BURR RIDGE, CITY OF DES PLAINES, VILLAGE OF LOMBARD, VILLAGE OF ORLAND PARK, VILLAGE OF TINLEY PARK, and VILLAGE OF SCHAUMBURG,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **vs.** | )     **Case No. 13 C 5633** ) |
| **EXPEDIA, INC. (WA), HOTELS.COM, LP, HOTWIRE, INC., EGENCIA, LLC, TRIP NETWORK, INC., ORBITZ, LLC, INTERNETWORK PUBLISHING CORP. (d/b/a LODGING.COM), PRICELINE.COM INCORPORATED (n/k/a THE PRICELINE GROUP INC.), PRICELINE.COM LLC, TRAVELWEB LLC, TRAVELOCITY.COM LP, SITE59.COM, LLC, and DOES 1 THROUGH 1000, INCLUSIVE,** | ) ) ) ) ) ) ) ) ) ) ) ) |
| **Defendant.** | ) ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

      Fourteen Illinois municipalities, on behalf of a putative class of similarly situated

municipalities, sued a number of online travel companies alleging that they failed to

remit taxes owed under plaintiffs' municipal hotel tax ordinances. Defendants removed

the case to federal court under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) &

1453.  In October 2014, plaintiffs moved to certify a class of 276 municipalities under Federal Rule of Civil Procedure 23(b)(1) and (b)(3), which the Court denied without prejudice to renewal.  *See Vill. of Bedford Park v. Expedia, Inc.*, No. 13 C 5633, 2015 WL 94851 (N.D. Ill. Jan. 6, 2015).  In September 2015, the Court denied plaintiffs' renewed motion for class certification, this time brought to certify a class of 154 municipalities under Rule 23(b)(3) alone.  *See Vill. of Bedford Park v. Expedia, Inc.*, 309 F.R.D. 442 (N.D. Ill. 2015).  Since that time, one plaintiff—City of Oakbrook Terrace— voluntarily dismissed its claims against defendants.  The remaining parties on both sides have now moved for summary judgment.  For the reasons stated below, the Court grants summary judgment on liability in favor of the Village of Lombard with respect to its hotel occupancy tax but otherwise enters summary judgment in favor of defendants.

## Background

Except where otherwise noted, the following facts are undisputed.  Plaintiffs are thirteen municipalities in Illinois.  Between 1974 and 2003, each one enacted one or more ordinances imposing taxes on the rental of hotel rooms within its borders.  Each of the ordinances is unique, but all share one common characteristic:  when a transient guest pays to occupy a hotel or motel room within a particular municipality, the ordinances require a sum of money (some percentage of the amount paid by the guest) to be remitted to the municipality in which the rented room is located.

When a transient guest reserves a room directly through a hotel's reservation system, the process is simple.  In that situation, the hotel bills the guest the room rental rate plus an additional amount that it will remit to its local municipal authority for the taxes due on the rental.  Arlington Heights, for example, imposes a five percent tax

"upon the use and privilege of renting, leasing or letting of rooms in a motel or hotel in the Village of Arlington Heights." Pls.' Ex. 57, dkt. no. 256-11, at 19. When a guest stays in a room priced at $100 in Arlington Heights, the hotel charges the guest $105 and indicates on the guest's bill that the total amount due consists of $100 in rental charges and $5 in taxes. The hotel then remits the five dollars it collected to the Village.

Transient guests in the twenty-first century, however, do not always make their room reservations directly with hotels. Defendants are online travel companies through which travelers may purchase hotel room reservations. These companies utilize various business models to procure inventory to advertise and sell to consumers. Under the "merchant model," the business model at issue in this case, defendants contract with hotels to purchase hotel rooms at a "wholesale" or "net" rate. When a traveler visits an online travel company's website, however, she does not ever see what that rate is. Instead, she is presented with two charges, one for the room rate (which the Court will refer to as the "retail" rate) and one for "taxes and fees." All of the online travel companies require users to agree to their terms and conditions, which state that the retail rate includes both the cost of the hotel room and consideration for the services the companies provide.

When a traveler pays an online travel company $100 to cover the retail rate of a hotel room in Arlington Heights and $5 in "taxes and fees," Arlington Heights does not receive five dollars. This is because the online travel company that collects $105 from a traveler might have purchased the room from the hotel at a net rate of $60. The online travel company delivers $63 to the hotel, and the hotel then remits $3 (five percent of $60) to the Village. The online travel company keeps the balance as its fee.

3

The central questions in this case concern whether plaintiffs' tax ordinances apply to online travel companies selling hotel rooms under the merchant model, and if so whether the tax must be calculated with reference to the retail rate set by the online travel companies or the net rate hotels charge them for the room. Put in terms of the example above, Arlington Heights seeks to recover the two-dollar difference between taxes remitted on the $60 net rate and taxes that would be remitted on the $100 retail rate.

Plaintiffs filed a putative class action suit in the Circuit Court of Cook County in July 2013. Shortly thereafter, defendants removed the case to federal court under the Class Action Fairness Act, 28 U.S.C. §§ 1332 & 1453. Plaintiffs asserted ten claims in their complaint, seven of which the Court dismissed in March 2014. *See Vill. of Bedford Park v. Expedia, Inc.*, No. 13 C 5633, 2014 WL 983129 (N.D. Ill. Mar. 13, 2014). Only counts one, two, and nine remained after dismissal. Count 1 seeks declaratory judgment on whether defendants have a duty to collect the taxes in question and remit them to plaintiffs. Count 2 alleges that defendants violated the municipal tax ordinances at issue. Count 9 claims damages based on the tax monies allegedly owed.

After engaging in class discovery, plaintiffs moved for class certification under Rules 23(b)(1)(A) and 23(b)(3) in October 2014. The Court denied plaintiffs' motion because differences in the tax ordinances from municipality to municipality made class adjudication under Rule 23(b)(1)(A) inappropriate and defeated plaintiffs' arguments that class adjudication was superior to individual adjudication and that common issues would predominate as required under Rule 23(b)(3). *See Vill. of Bedford Park*, 2015 WL 94851, at *4–6. In September 2015, the Court denied plaintiffs' renewed motion for

4

class certification, this time brought to certify a class under Rule 23(b)(3) alone. *See Vill. of Bedford Park*, 309 F.R.D. at 455. The Court again found that plaintiffs' proposed subclasses did not satisfy the predominance and superiority requirements. *Id.* at 451–52.

Discovery closed near the end of 2015. Plaintiffs made two separate motions for summary judgment in February 2016, one on behalf of the City of Oakbrook Terrace and one on behalf of the other thirteen plaintiffs. Oakbrook Terrace then filed a stipulation for voluntary dismissal in early March 2016, and its claims were accordingly dismissed with prejudice. *See* dkt. nos. 275, 276, 283, & 284. Defendants cross-moved for summary judgment on all of the remaining thirteen plaintiffs' claims.

## Discussion

Summary judgment is proper when the moving party "shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court draws reasonable inferences in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

On cross-motions for summary judgment, the Court assesses whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). "As with any summary judgment motion, [the Court] review[s] cross-motions for summary judgment construing all facts, and drawing

all reasonable inferences from those facts, in favor of the nonmoving party." *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013) (internal quotation marks omitted).

Plaintiffs seek summary judgment on counts 1 and 2 of their complaint. They contend that summary judgment should be granted in their favor on count 1 because the evidence indisputably shows that online travel companies that sell rooms under the merchant model are subject to each municipality's hotel occupancy ordinance. The parties agree that currently, plaintiffs receive remittances from room rentals purchased through online travel companies only in amounts calculated with reference to the net rate. Plaintiffs therefore argue that summary judgment should be granted in their favor on count 2 because the evidence shows that the tax rates provided in each ordinance apply to the retail rate. Plaintiffs ask the Court to grant summary judgment in their favor on these claims and "direct further proceedings to determine damages, interest, penalties, punitive damages, and any other relief this Court may deem appropriate." Pls.' Mem., dkt. no. 234-1, at 38.

Defendants assert that none of the ordinances under which plaintiffs seek tax money applies to online travel companies operating under the merchant model. They also argue that even if online travel companies are subject to some or all of these ordinances, the evidence shows that they have satisfied all of their obligations because under the merchant model, every municipality receives tax monies worth the designated percentage of each room's net rate. Finally, defendants contend that if these municipal tax ordinances require defendants to pay more to the municipalities than they already do by way of their contractual arrangements with local hotels, the ordinances violate the Illinois and United States Constitutions.

Neither party has cited, and the Court is not aware of, any judicial decisions from Illinois or federal courts interpreting the particular municipal ordinances in question. The Court therefore must engage in the task of interpreting these ordinances as a matter of first impression. Under Illinois law, courts use traditional rules of statutory construction to interpret municipal ordinances. *See Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 871 (7th Cir. 2009); *In re Application of the Cty. Collector*, 132 Ill. 2d 64, 72, 547 N.E.2d 107, 110 (1989). "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6, 919 N.E.2d 300, 303 (2009). Courts are required to "construe the [ordinance] as a whole and afford the language of the [ordinance] its plain and ordinary meaning. Where that language is clear and unambiguous, [courts] must apply the [ordinance] without further aids of statutory construction." *People v. Marshall*, 242 Ill. 2d 285, 292, 950 N.E.2d 668, 673 (2011). If an ordinance's language is ambiguous, courts may consider context and the consequences of a particular construction, and courts presume that ambiguous ordinances were not intended to create "absurd, inconvenient, or unjust consequences." *Id.* Illinois courts strictly construe taxing statutes and ordinances and resolve ambiguity against the government and in favor of the taxpayer. *See Van's Material Co. v. Dep't of Revenue*, 131 Ill. 2d 196, 202, 545 N.E.2d 695, 698 (1989).

## A.     Village of Arlington Heights

The Village of Arlington Heights enacted its hotel occupancy ordinance in November 1974. The ordinance defined the newly imposed tax as follows:

> A tax is hereby levied and imposed upon the use and privilege of renting, leasing or letting of rooms in a motel in the Village of Arlington Heights at

7

a rate of 2% of the gross rental receipts from such rental, leasing or letting. The ultimate incidence of and liability for payment of said tax shall be borne by the user, lessee or tenant of said rooms. The tax herein levied shall be in addition to any and all other taxes.

Pls.' Ex. 57, dkt. no. 256-11, at 19. The ordinance provided a definition of the words

"hotel" and "motel" as used therein:

The word "hotel" and the word "motel" within the meaning of this ordinance include every building or structure, kept, used, maintained, advertised and held out to the public to be a place where lodging, or lodging and food, or apartments, or suites, or other accommodations are offered for a consideration to guests, in which ten or more rooms, apartments or suites, or other accommodations are used for the lodging, or lodging and food, for such guests.

*Id.* It also explained how this tax would be paid and collected:

The owner and operator of each hotel and or motel and the person to whom the license to operate said hotel or motel shall have been issued by the Village, shall bear, jointly and severally, the duty to collect the tax from each user, lessee or tenant of rooms in such hotel or motel. Every person required to collect the tax levied by ordinance shall secure said tax from the user, lessee or tenant of a room or rooms at the time that he collects the price, charge or rent to which it applies.

*Id.* Arlington Heights set forth its method of keeping track of and enforcing its tax

ordinance as follows:

The Finance Director hereby is designated as the Administration and Enforcement Officer of the tax hereby imposed on behalf of the Village. It shall be the responsibility and duty of the Finance Director to collect all amounts due the Village from the Owners, operators and licensees of motels and hotels in the Village of Arlington Heights.

A sworn quarterly hotel and motel occupancy tax return shall be filed by each owner, operator or licensee of each hotel or motel in the Village of Arlington Heights with the Finance Director, on forms prescribed by him, showing all receipts from each renting, leasing or letting of rooms during the preceding three months. The dates upon which said quarterly returns are to be filed shall be provided by rules and regulations promulgated by the Finance Director.

*Id.* The ordinance further provided that Arlington Heights could sue to enforce the

payment of taxes "[w]henever any person shall fail to pay any taxes herein provided, or when any owner, operator or licensee of a hotel or motel in the Village shall fail to collect the tax hereby imposed from any person who has the ultimate liability for payment of the same." *Id.* at 20.

Over time, Arlington Heights passed a handful of ordinances amending this portion of its municipal code. In March 1977, Arlington Heights amended its hotel room tax to increase the tax rate from two to three percent. In December 1980, it increased the tax rate from three to four percent and amended the code to provide that hotels and motels in Arlington Heights were required to submit their occupancy tax returns on a monthly, rather than quarterly, basis. Arlington Heights raised its tax rate from four to five percent by an amendment passed in January 1996. Aside from these amendments, the language of the Village's hotel room tax remains the same as it was when it was enacted in 1974.

Defendants argue that Arlington Heights's ordinance does not apply to them because it places the duty to collect occupancy taxes from the "owner and operator of each hotel," and the undisputed evidence shows that they neither own nor operate hotels. Plaintiffs agree that the ordinance is directed toward the "owner and operator of each hotel." They contend, however, that the evidence shows that by the nature of defendants' involvement in furnishing room rentals for transient guests, defendants are functionally the owners and operators of any hotel whose rooms guests reserve through them. Plaintiffs point out that when a person purchases a room rental through an online travel company, the online travel company is the merchant of record on the purchaser's credit card statement. They also point out that customers are unable to cancel or

9

modify reservations through the hotel itself, and must instead cancel or modify reservations through the online travel company through which they booked. As plaintiffs point out, the evidence shows that from the time a person reserves a room through an online travel company until the time the person checks into the hotel, the online travel company is the person's only point of contact.

This does not render an online travel company the "owner and operator" of a hotel. Arlington Heights does not define the words "owner" and "operator," so the Court turns to common meaning to interpret the ordinance. Black's Law Dictionary defines an "owner" as "[s]omeone who has the right to possess, use, and convey something; a person in whom one or more interests are vested." *Owner*, Black's Law Dictionary (10th ed. 2014). An "operator" is one "who uses and controls something." *Operator*, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/operator (last visited June 20, 2016). The fact that the online travel companies are the only point of contact for customers who reserve rooms through them, without more, does not itself render the online travel companies owners or operators of hotels.

Plaintiffs argue that what makes an online travel company the owner or operator of a hotel is the fact that it sells rooms. To support their contention that defendants sell rooms, plaintiffs point out that defendants themselves describe their business as one of "selling" rooms and refer to the rooms they are authorized to sell as "inventory." Plaintiffs also contend that because hotels are contractually obligated to accept the reservation requests that customers make through online travel companies, defendants technically "own" the rooms that they purchase and rent to customers.

Although defendants refer to their business as "selling" rooms, they do not own

or operate hotels.  First, defendants are completely uninvolved in the day-to-day

business of running or managing hotels.  Plaintiffs contend that the evidence shows

otherwise, because the contracts between hotels and online travel companies typically

permit the online travel companies to hold hotels to certain standards in order to

maintain the contractual relationship.  In other words, plaintiffs contend that by telling

hotels that they must operate at or above a certain standard, defendants functionally

insert themselves into the day-to-day management of the hotels.  The Court is not

persuaded.  A contractual provision that states that a hotel must maintain certain

standards in order to continue doing business with an online travel company does not

render the latter the hotel's operator.

Plaintiffs cite a recent decision from the Circuit Court of Cook County in which the

court found online travel companies to be "operators" of a hotel.  In *City of Chicago v.*

*Hotels.com, L.P.*, No. 2005 L 051003 (Ill. Cir. Ct. July 8, 2013), the court said:

> [The online travel companies] are incorrect in claiming that they are not
> operators under the plain meaning of the word.  While [online travel
> companies] may not handle day-to-day operations at hotels, do not
> choose the distribution channels in order to get travelers to come to the
> hotel and do not set hotel policies or procedures, they perform other
> functions which make them fall within the plain meaning definition of an
> operator of hotel accommodations.  [Online travel companies] market and
> advertise on behalf of hotels, they set room rates for hotel rooms using
> their own discretion, they rent hotel rooms, they charge and collect room
> costs and taxes, they provide billing statements, make sure customer
> bookings are honored, handle all customer complaints, provide refunds,
> monitor hotel conditions and perform accounting and reconciliation
> functions.  [They] control the whole transaction with the customer up to the
> point where the customer physically arrives at a hotel.  Furthermore,
> [online travel companies] inform customers that if there are any issues or
> complaints with the hotel accommodations, or if any changes must be
> made, the customer is to contact the [online travel companies] and not the
> hotels.

*Id.*, slip op. at 23.  The Court respectfully disagrees.  Although the evidence reflects that

online travel companies manage the consumer's experience with the hotel reservation and booking process and require consumers to process any changes or cancelations through them, this does not amount to operating a hotel. Operating a hotel involves much more than taking reservations, ensuring reservations are honored, handling complaints, and serving as the primary contact for customers prior to their stay. The evidence indisputably shows, for example, that online travel companies do not choose what amenities hotels provide; they do not employ staff to clean or service hotel rooms; and they do not provide any services to transient guests when they are staying in hotels. They cannot be said to "operate" hotels.

Second, defendants do not "ha[ve] the right to possess, use, [or] convey" any hotels, which is what would be required for them to be considered owners of the hotels. It is undisputed that the online travel companies have no ownership interest whatsoever in any hotels located in any of the municipalities seeking taxes in this case. The contracts between defendants and hotels in Arlington Heights (and the other municipalities that have sued) do not permit the online travel companies to take possession of or use the hotels or their rooms. Rather, they simply permit the online travel companies to make reservations with the hotels on behalf of paying customers. Hotels continue to hold the keys to any reserved rooms until guests pick them up from hotel staff, and nothing in the hotels' contracts with the online travel companies provides the companies with any right to take those keys and gain access to reserved rooms. The hotels do not set aside a specific number of rooms for the online travel companies to book, and the online travel companies do not bear any of the losses for any rooms that are not ultimately reserved.

This Court agrees with the several other courts that have decided, in the absence of broader definitions provided by municipal ordinance or state statute, that online travel companies are not "owners" or "operators" of hotels. *See City of Columbus v. Hotels.com, L.P.*, 693 F.3d 642, 649 (6th Cir. 2012) (online travel companies "are not 'owners, proprietors, or managing agents' of hotels"); *Pitt Cty. v. Hotels.com, L.P.*, 553 F.3d 308, 313 (4th Cir. 2009) (online travel companies do not "operate" hotels); *Montana Dep't of Revenue v. Priceline.com, Inc.*, 380 Mont. 352, 356–57, 354 P.3d 631, 635 (2015) (online travel companies are not "owners or operators" of hotels); *Mayor of Baltimore v. Priceline.com, Inc.*, No. MJG–08–3319, 2011 WL 9961251, *4 (D. Md. Aug. 2, 2011) (online travel companies are not "owners" of hotels); *Cf. In the Matter of the Tax Appeal of Travelocity.com, L.P.*, T.A. No. 11–1–0021 (Haw. Tax App. Ct. Oct. 22, 2012), *aff'd*, 135 Hawaii 88, 127, 346 P.3d 157, 196 (2015) (online travel companies are not owners or operators of hotels). For this reason, defendants are not subject to the Village of Arlington Heights's hotel room occupancy tax, and the Court grants summary judgment in their favor against Arlington Heights.

## B.    Village of Bedford Park

The Village of Bedford Park passed "An Ordinance Enacting a Hotel/Motel Room Tax on Occupancy of Rooms in Hotels, Motels, and Lodging Facilities in the Village of Bedford Park" in October 1988. Pls.' Ex. 27, dkt. no. 256-8, at 2–3. Section one of the ordinance provided:

> A Hotel/Motel Room Tax be and is hereby enacted in the amount of seven percent (7%) of the one-night room charge for use and occupancy of a room at any hotel, motel, or other lodging facility operating within the corporate geographical limits of the Village of Bedford Park, Illinois. The charge shall be effective on each night that a room is reserved, occupied, or otherwise used in a hotel, motel, or other lodging facility within the

Village.  The tax assessed is charged against the room as a privilege for the use and occupancy of said room.

*Id.* at 3–4.  Section three provided for the collection and administration of the tax:

On or before the fifteenth calendar day of the month following the last day of the previous quarter of the year, the hotel, motel, or lodging facility shall remit to the Village Treasurer . . . a written summary showing the number of rooms occupied, the number of nights each room was occupied, and the rate charged per night for each room that was occupied during that quarter of the year.  Together with the aforementioned written summary, the hotel, motel, or other lodging facility shall submit by certified or cashier's check the amount of the room occupancy tax shown by the written summary.

*Id.* at 4.

Bedford Park increased its tax rate from 7% to 10.5% in 1992.  In November 2000, Bedford Park amended its village code to delete section one and replace it with the following:

A Hotel/Motel room tax be and is hereby enacted in the amount of ten and one-half percent (10.5%) of the one-night room charge for use and privilege of a room at any hotel/motel, or other lodging facility operating within the corporate geographical limits of the Village.

The charge shall be effective on each night that a room is reserved, occupied, or otherwise used in a hotel, motel or other lodging facility within the Village.  The tax assessed is charged against the room as a privilege for the use of said room.  The ultimate incidence of and liability for payment of said tax is to be borne by the person or persons who seek the privilege of occupying the hotel or motel room.

Pls.' Ex. 28, dkt. no. 256-8, at 11.  Section three was amended as well:

The person or persons who own a hotel or motel room within the Village shall collect the tax from the person or persons who seek the privilege of occupying the hotel or motel room.  The tax shall be paid to such person required to collect it as trustee for and on account of the Village.  The person or persons who own a hotel or motel room within the Village shall file tax returns, in a form to be provided or approved by the Village, reflecting tax receipts received with respect to each separate hotel or motel during each month.  Remittance of the tax collected shall be made to the Village Treasurer by certified or cashier's check on or before the

twenty fifth day of the month for which the tax was due. . . .

*Id.* at 11–12.  Bedford Park's hotel room tax has not changed since this amendment was

passed.

Like Arlington Heights, Bedford Park places the duty to collect and remit

occupancy taxes on hotel owners, and it does not provide a definition of "owner" in its

village code or refer to a definition provided elsewhere.   As explained above, the

undisputed evidence shows that defendants are not hotel "owners" under the common

meaning of that word.  Defendants are not subject to the Village of Bedford Park's hotel

room occupancy tax, and the Court therefore grants summary judgment in their favor

against Bedford Park.

### C.    Village of Oak Lawn

The Village of Oak Lawn enacted a "Hotel and Motel Occupancy Tax" in

December 1976:

> There is hereby levied and imposed upon the use and privilege of being a
> transient guest or lodger in a hotel or motel as defined in this ordinance, in
> the Village of Oak Lawn, a tax equal to 3% of the cost or charge on the
> gross room rental made by the hotel or motel for every 24-hour period or
> any fraction thereof.  Effective the first day of the month following passage
> of this ordinance, if a transient guest or lodger is staying in a hotel or motel
> for which a charge is made on a weekly basis, the amount of the tax shall
> be equal to 3% of said weekly charge on the gross room rental.  This said
> tax is exclusive of revenues received from food, beverage and other
> sales. . . .

Pls.' Ex. 36, dkt. no. 256-9, at 23.  Oak Lawn placed the duty "to secure said tax from

the guest or lodger" on "the operator of [a] hotel or motel."  *Id.*  It did not define the word

"operator," but it did provide a definition of "hotel":

> The word "hotel" and the word "motel" within the meaning of this Section
> includes every building or structure kept, used, maintained, advertised and
> held out to the public to be a place where lodging, or lodging and food, or

> apartments, suites, or other accommodations are offered for a
> consideration of guests in which ten (10) or more rooms, apartments or
> suites, or other accommodations are used for the lodging, or lodging and
> food, for such guests.

*Id.* The Village also placed on "every person operating a hotel or motel in the Village"

the duty "file tax returns showing tax receipts received with respect to each hotel or

motel" on a quarterly basis and "to keep accurate and complete books and records" to

which the Village would have access in order to ensure the proper remittances were

being made. *Id.* at 24.

Finally, the ordinance provided for three penalties in the event "any hotel or motel

owner, manager or operator" failed to collect and pay the required tax. *Id.* First, it set

forth that if taxes were not paid within ten days of their due date, interest would begin to

accrue. Second, it provided that "a penalty of ten percent (10%) of the tax and interest

due [would] be assessed and collected against any hotel or motel owner, manager or

operator." *Id.* Third, the ordinance provided for the revocation of licenses for willful tax

evaders:

> If the Village President, after hearing held, shall find that any person has
> willfully avoided payment of the tax imposed by this ordinance, [he/she]
> may suspend or revoke all Village licenses held by such tax evader. The
> operator shall have an opportunity to be heard at such hearing to be held
> not less than five days after notice of the time and place of the hearing to
> be held, addressed to him at his last known place of business. Pending
> notice, hearing and finding, any license of which such person may be
> possessed shall be temporarily suspended by the Village President. Any
> suspension or revocation of any license shall not release or discharge the
> operator of a hotel or motel from his civil liability for the payment of the tax
> nor from prosecution for such offense.

*Id.*

The Village of Oak Lawn amended its tax ordinance four times after its passage.

In 1977, it exempted from the tax persons who occupy a hotel room for thirty or more

16

consecutive days.  In February 1991, it made non-substantive changes to the section of the code defining the contours of the tax and increased the tax rate to 4%.  In September 1992, the Village made non-substantive changes to the section providing for the accrual of interest and the incurrence of penalties.  In January 2009, the Village increased the tax rate from 4% to 8%.  In none of these amendments did the Village refine the scope of tax liability, redefine any key terms, or reassign the collection and payment duties from "owners," "operators," and "managers" of hotels to someone else.

Defendants are not subject to the Village of Oak Lawn's hotel room occupancy tax for the same reasons defendants are not liable for such taxes in Arlington Heights and Bedford Park.  The duty to collect and remit occupancy taxes to the Village of Oak Lawn belongs only to the "operator" of the hotel, which, for the reasons given above, defendants are not.  When a hotel operator fails to pay taxes in Oak Lawn, the penalties assigned are assigned against the "owner, manager or operator" of the hotel.  The word "manager" is not defined, but defendants are not managers under the common meaning of that word.  *See Manager*, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/manager (last visited June 20, 2016) (defining "manager" as "someone who is in charge of a business, department, etc."); *Manager*, Black's Law Dictionary (10th ed. 2014) (defining "manager" as "[s]omeone who administers or supervises the affairs of a business, office, or other organization").  More importantly, the nature of the penalty for failure to remit taxes—suspension of any village license— says something about whose responsibility it is to collect and remit occupancy taxes: the threat of losing a license is meaningless for online travel companies.  The Court grants summary judgment in favor of defendants and against the Village of Oak Lawn.

17

**D.     Village of Orland Hills**

The Village of Orland Hills enacted its "Hotel Accommodations Tax" in 1992.  Its original ordinance established a tax "upon the rental or leasing of any hotel accommodations in the village at the rate of one percent (1%) of the gross rental or leasing charge."  Pls.' Ex. 42, dkt. no. 256-9, at 47.  It also provided that "[i]t shall be the duty of every owner, manager or operator of hotel accommodations to secure said tax from the lessee or tenant of said hotel accommodations and pay over to the Treasurer said tax . . . ."  *Id.*  The ordinance defined "hotel accommodations" as follows:

> A room or rooms in any building or structure kept, used, or maintained as or advertised or held out to the public to be an inn, motel, hotel, apartment hotel, lodging house, dormitory, or place, where sleeping, rooming, conference, or exhibition accommodations are furnished for lease or rent, whether with or without meals, in which ten or more such accommodations are used or maintained for guests, lodgers, or roomers.  The term "Hotel Accommodations" does not include an accommodation which a person occupies, or has the right to occupy, as his domicile and permanent residence.

*Id.* at 46.  Like Oak Lawn, Orland Hills provided for suspension and revocation of licenses as a penalty for willful avoidance of this tax.  In April 1993, Orland Hills amended its ordinance to gradually raise the tax rate over the coming five years to five percent.  The amendment did not specifically limit the tax to the "gross rental or leasing charge," instead stating only that the tax was imposed "upon the rental or leasing of any hotel accommodations in the Village" at a sequence of gradually increasing rates.

Orland Hills has not defined "owner, manager or operator of hotel accommodations."  For the reasons stated above, the Court finds that defendants are not owners, managers, or operators of hotel accommodations.  They are therefore not subject to the Village of Orland Hills's Hotel Accommodations Tax.  The Court grants

summary judgment in favor of defendants on Orland Hills's claims.

### E.    Village of Orland Park

Orland Park enacted its tax on hotel accommodations in October 2003, and it has not ever amended its ordinance.  Orland Park taxes "the rental or leasing of any Hotel Accommodations at the rate of four percent (4%) of the gross rental or leasing charge."  Pls.' Ex. 77, dkt. no. 256-13, at 11.  "The ultimate incidence of and liability for payment of said tax shall be borne by the hotel owner, manager or operator of such Hotel Accommodations."  *Id.*  "It [is] the duty of every owner, manager or operator of Hotel Accommodations to secure said tax from the lessee or tenant of said Hotel Accommodations and pay over to the Finance Director said tax . . . ."  *Id.*  The Village requires the tax to be "secured by the hotel owner, manager or operator from the lessee or tenant when collecting the price, charge or rent to which it applies."  *Id.* at 12.

Orland Park's ordinance provides definitions of the terms "Hotel Accommodations" and "Hotel Operator."  Hotel Accommodations are defined as:

> A room or rooms in any building or structure located in the Village and kept, used or maintained as or advertised or held out to the public to be an inn, motel, hotel, apartment hotel, lodging house, dormitory or place, where sleeping, rooming, conference or exhibition accommodations are furnished for lease or rent, whether with or without meals, in which ten (10) or more such accommodations are used or maintained for guests, lodgers or roomers.

> The term "Hotel Accommodations" does not include an accommodation which a person occupies, or has the right to occupy, as his domicile and permanent residence.

*Id.* at 10–11.  "Hotel Operator" is defined as "[a]ny person operating hotel accommodations."  *Id.* at 11.

Orland Park imposes upon and requires payment of taxes by the owner,

19

manager, or operator of hotel accommodations as defined above. Its ordinance expressly provides that the duty to collect and remit taxes belongs to owners, managers, and operators of hotel accommodations. The Court has already explained why defendants are not owners or managers of hotels or hotel accommodations. Defendants are also not "Hotel Operators" as the Village of Orland Park defines that term. As the Court explained above, defendants do not own, manage, or operate a room or rooms in any building in Orland Park that is kept, used, or maintained as or advertised to be a hotel. The Court therefore grants summary judgment in defendants' favor on Orland Park's claims.

## F.    Village of Schaumburg

The Village of Schaumburg enacted its "Hotel and Motel Tax" in January 1982, taxing "the use and privilege of renting, leasing or letting of rooms in a motel or hotel in the Village of Schaumburg at a rate of 4% of the gross rental receipts from such rental, leasing or letting." Pls.' Ex. 84, dkt. no. 256-13, at 54. The ordinance also provided as follows:

> The owner and operator of each hotel and or motel and the person to whom the license to operate said hotel or motel shall have been issued by the Village, shall bear jointly and severally, the duty to collect the tax from each user, lessee or tenant of rooms in such hotel or motel. Every person required to collect the tax levied by ordinance shall secure said tax from the user, lessee or tenant of a room or rooms at the time that he collects the price, charge or rent to which it applies.

*Id.* The tax placed on "owners, operators, and licensees" the duty to pay and the duty to file tax returns that the Village could monitor to ensure that taxes were being properly collected and remitted. It also provided for the suspension or revocation of licenses held by willful tax evaders.

Schaumburg raised its tax rate to "6% of the gross rental receipts from . . . rental, leasing or letting" in January 2000.  Pls.' Ex. 87, dkt. no. 256-13, at 66.  It also amended its ordinance on two occasions to modify the enforcement and administration portions of the tax.  In July 2000, for example, the Village added a section providing that "[e]ach and every owner and operator of any hotel and/or motel within the Village of Schaumburg shall designate an individual . . . to receive any written communication from the Village regarding [the hotel/motel tax]."  Pls.' Ex. 90, dkt. no. 256-13, at 81.  It also provided that "[e]ach owner and operator of each hotel and/or motel may additionally designate an individual . . . outside of the corporate limits of the Village of Schaumburg to receive the same information or inquiries," and that it is "the obligation of each owner or operator of the hotel and/or motel to notify the Village in writing via certified mail of any change of persons so designated."  *Id.*

The duty to collect and remit hotel accommodations taxes in Schaumburg falls squarely on the owner and operator of a hotel and "the person to whom the license to operate said hotel or motel shall have been issued by the Village."  Defendants are none of these things:  they do not own or operate hotels, and they have not been issued any licenses to operate hotels in Schaumburg.  They therefore do not have a duty to collect and remit taxes to the Village, so Schaumburg's claims fail as a matter of law.  The Court grants summary judgment in favor of defendants on Schaumburg's claims.

## G.    Village of Tinley Park

Tinley Park enacted its "Hotel Accommodations Tax" in April 1994.  It taxed "the renting, leasing or letting of any Hotel Accommodations in the Village at the rate of three percent (3%) of the gross rental or leasing charges and revenues, exclusive of revenues

received from food and beverage sales." Pls.' Ex. 79, dkt. no. 256-13, at 25. The Village placed the "ultimate incidence of and liability for payment of said tax" on the "user, lessee or tenant of such Hotel Accommodations," but it provided that "it [is] the duty of every owner, manager or operator of Hotel Accommodations to secure said tax from the lessee or tenant of said Hotel Accommodations and pay over to the Treasurer said tax . . . ." *Id.*

Under Tinley Park's ordinance, the "owner, manager or operator of each Hotel Accommodations shall bear, jointly and severally, the duty to collect the tax herein levied from each user, lessee or tenant of any Hotel Accommodations when collecting the price, charge or rent to which it applies." *Id.* The "owner, manager or operator of Hotel Accommodations" also has the duty to maintain records the Village can review to ensure the proper amounts are being collected and remitted, and the Village may revoke or suspend licenses held by a person who fails to collect and remit as required. *Id.* at 26, 27. "The suspension or revocation of any license shall not release or discharge the owner, manager or operator of Hotel Accommodations from civil liability for the payment of the tax, interest and late charges, nor for prosecution of such offense." *Id.* at 27. The ordinance defines "hotel accommodations" in much the same way as the other plaintiffs' ordinances:

> A room or rooms in any building or structure located in the Village and kept, used or maintained as or advertised or held out to the public to be an inn, motel, hotel, apartment hotel, lodging house, bed and breakfast lodge or home, dormitory or place where sleeping, rooming, conference or exhibition accommodations are furnished for lease or rent, whether with or without meals, in which ten (10) or more such accommodations are used or maintained for guests, lodgers or roomers. The term "Hotel Accommodations" does not include an accommodation which a person occupies, or has the right to occupy, as his domicile and permanent residence.

*Id.* at 24.

Tinley Park amended its municipal code in April 2000 to raise the hotel accommodations tax rate to four percent. It amended its code again in December 2001 to modify the enforcement provisions of the tax, but this provision continued to focus enforcement actions on "the owner, operator, licensee or manager of any hotel accommodations." Pls.' Ex. 82, dkt. no. 256-13, at 44. In November 2010, Tinley Park raised its tax rate to six percent. Aside from these modifications, Tinley Park's hotel accommodations tax has not changed since it was enacted in 1994.

Like the other ordinances the Court has already discussed, Tinley Park's ordinance places all collection and remittance duties on owners, operators, licensees, and managers of hotel accommodations. It provides for enforcement actions only against such persons, and it establishes penalties that can sensibly be applied only to such persons. The evidence shows that defendants are not owners, operators, or managers of hotels, and they are not licensed by the Village of Tinley Park to operate hotels. For this reason, the Court grants summary judgment in favor of defendants on Tinley Park's claims.

## H.    Village of Burr Ridge

Burr Ridge enacted a "Hotel and Motel Tax" in December 1990. It provided:

Effective May 1, 1991, a tax is hereby levied and imposed upon the use and privilege of engaging in the business of renting, leasing or letting of room(s) in a motel or hotel (as hotel is defined herein or in The Hotel Operators' Occupation Tax Act of the State of Illinois) in the Village at the rate of one percent (1%) of the gross room sale (rental) revenues (exclusive of other taxes) from such rental, leasing or letting, exclusive of revenues received from food, beverage and other sales. For purposes of this Section, room sale (rental) revenues shall include only the basic room charge exclusive of meals, beverages and other "package" items. . . .

> Persons engaged in such business and subject to the tax imposed
> pursuant to the authority granted by this Section may reimburse
> themselves for their tax liability for such tax by separately stating such tax
> as an additional charge on the bill to the individuals renting, leasing or
> letting any such rooms, which charge may be stated in combination, in a
> single amount, with the state tax imposed under The Hotel Operators'
> Occupation Tax Act of the State of Illinois.

Pls.' Ex. 62, dkt. no. 256-11, at 38–39.

The ordinance went on to place "the duty to pay the tax" on the "owner, manager or operator of each hotel or motel," and to allow such persons to "collect the tax from each user, lessee or tenant of rooms in such hotel or motel." *Id.* at 39. The Village Treasurer was empowered "to collect all amounts due the Village from the owners, managers and operators of motels and hotels in the Village." *Id.* Owners, managers, and operators were required to keep detailed records and submit tax returns, and the tax provided for suspension or revocation of licenses should an "owner, manager or operator of a hotel or motel in the Village" fail to pay. *Id.* at 39–40.

Burr Ridge's tax ordinance was amended in 1991 to modify the provision concerning the disposition of proceeds from the tax. It was amended again in 2003 to increase the operative tax rate to three percent, and again in 2010 to gradually raise the rate to four percent. The Village also modified its tax to make "Gross Room Rental Revenues" a defined term, which it separately defined as "[a]ll gross room sale (rental) revenues (exclusive of other taxes) from such rental, leasing or letting, exclusive of revenues received from food, beverage and other sales. Gross Room Rental Revenues shall include only the basic room charge exclusive of meals, beverages and other 'package' items." Pls.' Ex. 66, dkt. no. 256-12, at 10.

Defendants first argue that they do not engage in the business of renting,

24

leasing, or letting rooms because one must have an ownership or possessory interest in a room to be understood to rent, lease, or let it. The Court disagrees. Burr Ridge's ordinance, like the ordinances of the five municipalities the Court will discuss next, taxes "the use and privilege of engaging in the business of renting." This is considerably broader than taxing rental or leasing. It may be true that a person who does not own, operate, or manage a hotel, but instead sells reservations to potential hotel guests, does not rent, lease, or let the room. As defendants point out, the evidence indisputably shows that guests who reserve rooms through online travel companies are still ultimately given access to their rooms when they pick up their keys from hotel staff upon check-in. But it is a different question to ask whether selling reservations constitutes "engaging in the business" of renting rooms. The evidence in this case shows that a significant portion of defendants' business is selling hotel room reservations that contractually obligate hotels to rent their rooms to the purchaser. The Court is not persuaded by defendants' argument that they cannot be engaged in the business of renting, leasing, or letting unless they have an ownership interest in the rooms.

Defendants argue that at the very least, Burr Ridge's ordinance sends contradictory signals that render it ambiguous. On the one hand, the ordinance imposes a tax on "engaging in the business of renting, leasing or letting of room(s)." On the other, the remainder of the ordinance places duties and responsibilities on hotel owners, managers, and operators, and provides for enforcement and penalties against such persons. It also imposes on owners, operators, and managers a duty to maintain records the Village can monitor and file tax returns indicating the amounts collected and remitted. Defendants contend that it is not possible to reconcile these arguably

conflicting instructions.  In light of the rule that courts in Illinois must resolve ambiguities in tax ordinances and statutes in favor of the taxpayer, defendants ask the Court to find Burr Ridge's ordinance inapplicable to online travel companies that do not own, operate, or manage hotels.

The Court agrees with defendants.  By clearly indicating that only hotel owners, manager, and operators are responsible for collecting and remitting taxes under its ordinance, Burr Ridge has unambiguously excluded defendants from the duty to pay. To the extent the ordinance indicates that defendants are subject to Burr Ridge's tax, the ordinance is internally inconsistent.  The Court must resolve any such inconsistency in favor of defendants.  *Van's Material Co.*, 131 Ill. 2d at 202, 545 N.E.2d at 698.  The Court therefore grants summary judgment in defendants' favor on Burr Ridge's claims.

## I.    City of Des Plaines

As an initial matter, the Court agrees with defendants that it would not be appropriate at this juncture for the Court to consider whether defendants are subject to the City of Des Plaines's "O'Hare Corridor Privilege Tax."  Plaintiffs do not dispute that "there are no hotels in the O'Hare corridor area, and Des Plaines is not currently alleging that Defendants have failed to pay O'Hare Corridor Privilege Tax[es]."  Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts, dkt. no. 278, ¶ 124.  Plaintiffs argue that this is irrelevant because they seek declaratory judgment "regarding the [defendants'] liability under this ordinance so that the parties understand the [defendants'] tax obligations given any future hotel developments."  *Id.*  But "declaratory judgment is appropriate only when the court's ruling would have an impact on the parties."  *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009).

Plaintiffs have not alleged or shown that defendants are or plan to be engaged in the business of renting hotel rooms at hotels within the O'Hare Corridor. The Court agrees with defendants that it is premature to consider whether, were guests in the future to rent hotel rooms in the O'Hare Corridor through an online travel company, the company would be required to remit taxes under the O'Hare Corridor Privilege Tax. The Court therefore dismisses Des Plaines's claim for declaratory relief related to this tax.

The City of Des Plaines enacted its "Hotel – Motel Operator's Occupation Tax" in October 1973. The tax imposed was described as follows:

> A tax is hereby imposed upon persons engaged in the business of renting, leasing or letting rooms in a hotel or motel at the rate of 2% of 95% of the gross rental receipts from such renting, leasing or letting, excluding however, from said gross rental receipts, the proceeds of such renting, leasing or letting to permanent residents of said hotel or motel.

Pls.' Ex. 67, dkt. no. 256-12, at 16. "Persons subject to the tax" were permitted to "reimburse themselves for their tax liability under this Ordinance by separately stating such tax as an additional charge." *Id.* at 17. The ordinance also provided a number of definitions:

> (1) "Hotel or Motel" means any structure in which the public may, for a consideration, obtain living quarters, sleeping, or housekeeping accommodations. The term includes, but is not limited to inns, motels, tourist homes or courts, lodging houses, rooming houses, and apartment buildings.
>
> (2) "Room or rooms" means any living quarters, sleeping or housekeeping accommodations. One room offered for rental with or without an adjoining bath shall be considered as a single room.
>
> (3) "Occupancy" means the use or possession, or right to use or possession, of any room or rooms in a hotel or motel for living quarters, or for sleeping or housekeeping accommodations. Occupancy does not mean the use or possession or right to the use or possession of any room or rooms in a hotel or motel for purposes of displaying merchandise, samples, etc., for the purpose of holding meetings, for use as office space,

27

or for private dining purposes.

(4) "Operator" means any person operating a hotel or motel.

. . .

(6) "Rent or rental" means the consideration received for occupancy, valued in money, whether received in money or otherwise, including all receipts, cash, credits, and property or services of any kind or nature.

*Id.* at 15–16. Finally, the tax ordinance imposed a requirement that the "person or persons who own a hotel room within the City of Des Plaines shall file tax returns reflecting tax receipts received with respect to each separate hotel" on a monthly basis. *Id.* at 17. Des Plaines amended its ordinance in 2007 to increase its tax rate to "seven percent (7%) of the gross rental receipts from . . . renting, leasing or letting," Pls.' Ex. 69, dkt. no. 256-12, at 31, and it amended its ordinance again in October 2013 to renumber it when Des Plaines updated its city code, *see* Pls.' Ex. 70, dkt. no. 256-12, at 35–36.

Defendants make an argument similar to the one they made concerning Burr Ridge's tax ordinance. They first contend that this ordinance, by its terms, does not apply to online travel companies. They next argue that the ordinance is at the very least ambiguous because although it purports to tax all persons engaged in the business of renting, it is titled a "Hotel – Motel Operator's Occupation Tax" and places on hotel room owners the duties of maintaining records and reporting tax revenues to the City.

Des Plaines's ordinance does not contain the apparent internal inconsistencies that Burr Ridge's ordinance contains. It is not necessarily true that taxing persons "engaged in the business of renting, leasing or letting" is inconsistent with requiring hotel owners to maintain records and file tax returns indicating the amounts collected

and remitted. The City appears to have chosen a broad tax base and a comparatively narrow group of record-keepers. Placing the duty to collect and remit on all persons engaged in the business of renting while placing the duty to maintain records and file tax returns on hotel owners alone may not be the best way to administer a tax. But it is nonetheless an unambiguous way to tax all persons engaged in the business of renting or leasing hotel rooms. The City's hotel room occupancy tax applies to all persons engaged in the business of renting hotel rooms, rent being defined as consideration received for occupancy. Defendants collect consideration from customers in exchange for a promise that their reservation will be honored at a hotel in Des Plaines. They are therefore "engaged in the business of renting" hotel rooms, and as a result they are subject to Des Plaines's tax.

Defendants argue that even if they are responsible for collecting and remitting occupancy taxes under Des Plaines's ordinance, summary judgment should be granted in their favor because the evidence shows that they properly collect and remit the correct amount to the City of Des Plaines. They contend that the ordinance merely requires the collection and remittance of seven percent of the amount charged for occupancy, excluding all other amounts charged to the transient guest. Because defendants transfer to hotels the net room rental rate those hotels charge plus seven percent of that rate to be remitted as taxes, say defendants, they fulfill any duties the ordinance might impose on them.

Plaintiffs argue that defendants should be collecting and remitting seven percent of the retail rate they present to customers. Plaintiffs contend that it would make no sense to require online travel companies to remit a percentage of a net rate that

29

purchasers never see during the booking process and are never told about thereafter. Plaintiffs also argue that even the defendants treat the retail rate like a room rental rate. They base this claim on evidence showing that defendants calculate the amount of taxes and fees they charge customers by multiplying the full retail rate by the applicable tax rate in each municipality.

Neither of these arguments is persuasive. First, the City of Des Plaines taxes only "gross rental receipts." Under the ordinance's own definition of "rental," the tax applies only to "consideration received for occupancy." This excludes consideration received for other services defendants provide, including aggregating hotel room options and facilitating reservations with hotels. As explained above, the evidence is undisputed that defendants require consumers to agree to terms of service that indicate that the retail rate includes both the cost of the room and the cost of other services defendants provide. The record shows that when a customer pays a defendant for a room reservation, the consideration the defendant receives for occupancy is the net rate of the hotel room. That is the amount the defendant pays to the hotel to guarantee that the customer will be able to check into the hotel and stay in the rented room. Second, it is immaterial that defendants determine the amount of taxes and fees a customer owes by multiplying the applicable tax rate by the retail rate. This does not demonstrate that the retail rate is equivalent to the amount of consideration received for occupancy.

Plaintiffs have failed to adduce evidence from which a jury could reasonably draw the conclusion that defendants have failed to collect and remit the taxes they must pay under the terms of Des Plaines's occupancy ordinance. The Court therefore grants summary judgment on the City of Des Plaines's claims in favor of defendants.

30

J.    **City of Rockford**

The City of Rockford imposes two taxes on hotel room rentals.  Rockford's "Hotel

or Motel Sales Tax" provides:

> There is hereby levied and imposed a sales tax of one percent (1%) upon
> the charge for renting a hotel or motel room for any purpose in the City of
> Rockford for each twenty-four (24) hour period, or any portion thereof.
> The tax herein levied shall be in addition to any and all other taxes and
> charges applicable to such hotels or motels, but such other taxes and
> charges shall not be construed to be a part of the charge upon which the
> herein sales tax is levied.
>
> The ultimate incidence of and liability for payment of the sales tax levied
> herein is to be borne by the renter of said room.  Such tax is to be paid by
> the renter, and nothing in this Section shall be construed as a tax upon the
> occupation of renting hotel or motel rooms.
>
> Any person engaged in renting hotel or motel rooms shall include the tax
> imposed herein in the rental price, or otherwise absorb such tax . . . .

Pls.' Ex. 45, dkt. no. 256-10, at 16.  This tax was enacted in 1978, and it has never been

amended.

In 1984, Rockford passed an ordinance "Imposing [a] Tax on Persons Engaged

in Renting or Leasing Hotel Rooms."  Pls.' Ex. 47, dkt. no. 256-10, at 30.  This

ordinance imposed a tax "upon all persons engaged in the City of Rockford in the

business of renting, leasing, or letting rooms in a hotel . . . , at a rate of 1% of the gross

rental receipt from such renting, leasing, or letting."  *Id.*  It placed the duty to transmit "a

sum of money equal to the tax imposed on the renting of hotel rooms" to the City's

Finance Director on "person[s] engaged in the renting of hotel rooms," and obligated

those same persons to "keep complete and accurate books and records" that the City

could inspect to ensure compliance.  Pls.' Ex. 46, dkt. no. 256-10, at 25.

Defendants contend that they are not subject to Rockford's ordinances because

31

they do not own hotel rooms and therefore cannot rent rooms. As the Court has already explained, however, a person need not own or have a possessory interest in a hotel room to "engage in renting" or "engage in the business of renting." Rockford's ordinances do not limit the duty to collect and remit these taxes to the owners, operators, managers, or licensees of hotels in the City. The evidence shows that defendants are engaged in the business of renting hotel rooms, so Rockford's ordinances apply.

The ordinances do not, however, require defendants to remit more than the evidence shows they are already remitting. Like Des Plaines, Rockford narrowly calls for the collection and remittance of taxes on "the charge for renting" and the "gross rental receipt from such renting, leasing or letting" hotel rooms. Although Rockford's ordinances are less explicit than Des Plaines's about what is meant by these terms, they also do not provide any indication that they should be construed more broadly. In light of the rule that ambiguities in tax ordinances must be resolved in favor of taxpayers, the Court finds that these ordinances require only that defendants collect and remit taxes on the net rates hotels charge to secure a room rental in the City. The undisputed evidence shows that defendants have done just that. The Court therefore grants summary judgment on Rockford's claims in favor of defendants.

**K.    City of Warrenville**

Enacted in September 1986, Warrenville's "Hotel Operator's Tax" "imposed upon all persons engaged in the City in the business of renting, leasing, or letting rooms in a hotel" a tax "at a rate of 5% of the gross rental receipts from such renting, leasing or letting." Pls.' Ex. 30, dkt. no. 256-8, at 22. Under the ordinance, "'Rent' or 'rental'

mean[t] the consideration received for occupancy, valued in money, whether received in money or otherwise . . . ."  *Id.*  The ordinance defined "operator" as "any person operating a hotel," but did not contain the term "operator" anywhere else aside from the ordinance's title.  *Id.*

The ordinance was amended in 2001 to raise the tax rate to five percent and to add sections providing for the administration and enforcement of the tax.  That amendment empowered Warrenville's Finance Director to "enter the premises of any hotel or motel for inspection and examination of records in order to effectuate the proper administration of [the tax] and to assure the enforcement of the collection of the tax imposed."  Pls.' Ex. 31, dkt. no. 256-8, at 26–27.  It also provided that "[t]he owner or operator of each hotel or motel room within the City shall file tax returns showing tax receipts received with respect to each hotel and motel room during each month" and that "[a]t the time of filing said returns, the owner shall pay to the City Finance Director all taxes due for the period to which the tax returns apply."  *Id.* at 27.  The City amended provisions related to how proceeds could be used and procedures for reporting, but the tax otherwise remains the same as it was when first enacted.

By amending its ordinance to impose the duty to collect and remit taxes on the "owner" of a hotel room, Warrenville likely excluded defendants from the obligation to collect and remit taxes.  But even construing the ordinance to apply due to its otherwise broad application to "all persons" who engage in the business of renting hotel rooms, Warrenville's claims fail.  Like Des Plaines, Warrenville taxes only "gross rental receipts," and it defines "rental" as "consideration received for occupancy," nothing more.  As explained above, the only evidence in the record that shows what rate

33

customers pay for occupancy alone is evidence of the net rate hotels charge for occupancy. Because defendants remit the appropriate percentage of that amount, no jury reasonably could conclude that defendants have failed to comply with Warrenville's ordinance. The Court therefore grants summary judgment for defendants on Warrenville's claims.

**L.    Village of Willowbrook**

Like Des Plaines and Warrenville, Willowbrook imposes a "Municipal Hotel Tax" "upon all persons engaged in the Village in the business of renting, leasing or letting rooms in a hotel on the gross rental receipts from such renting, leasing or letting . . . ." Pls.' Ex. 54, dkt. no. 256-11, at 3. As originally enacted in October 1986, the tax provided definitions and sets forth recordkeeping and payment responsibilities. It defined "rent" or "rental" as "the consideration received for occupancy, valued in money, whether received in money or otherwise . . . ." *Id.* at 4. It required "[e]ach person subject to the tax imposed" to "make a tax return as required by this section to the village treasurer on or before the twentieth day of each month." *Id.* "Each person making the return" was required, "at the time of making such return," to "pay to the village treasurer the amount of tax herein imposed." *Id.* And if a person subject to the tax failed to keep separate books and records to show taxable rents and occupancies, "he [would] be liable to the tax at the rate designated . . . hereof upon the entire proceeds from his hotel." *Id.* at 5. In February 2001, Willowbrook amended the "interest and penalties" provision of its ordinance. It also amended its ordinance to increase its tax rate in June 2015. The language of the original ordinance remains otherwise unchanged.

Defendants contend that Willowbrook's tax ordinance does not apply to them because they do not own hotels. They contend that because the ordinance provides that persons subject to the tax must keep separate books and records or risk tax liability upon the entire proceeds from their hotels, the ordinance only applies to persons who own hotels. The Court is not persuaded. Understanding Willowbrook's ordinance to apply only to hotel owners despite never mentioning ownership would require a strained reading of the ordinance. Willowbrook broadly provides that all persons who engage in the business of renting must collect and remit taxes, must submit tax returns to the Village, and must keep accurate books and records to ease administration and enforcement of the tax. For the reasons previously stated, the Court finds that defendants are engaged in the business of renting hotel rooms and are therefore subject to Willowbrook's tax.

However, like Warrenville and Des Plaines, Willowbrook does not require defendants to remit any more than the evidence shows they already remit. Willowbrook's tax is applicable only to the gross rental receipts from renting hotel rooms, and rental is narrowly defined as consideration paid for occupancy alone. Some of the retail rate consumers pay constitutes consideration not for occupancy, but for the service that online travel companies provide by helping hotels and guests find one another. The only portion of the retail rate that the evidence shows is attributable to securing occupancy is the net rate that hotels charge defendants. Defendants then apply Willowbrook's tax rate to that amount and remit the correct amount of money. No jury could reasonably determine that defendants are violating Willowbrook's tax ordinance based on the undisputed evidence. The Court grants summary judgment in

defendants' favor on Willowbrook's claims.

## M.    Village of Lombard

In October 1985, Lombard passed an ordinance "Levying a Tax Upon All Persons Engaged in the Business of Renting, Leasing or Letting Rooms in a Hotel as Defined in 'The Hotel Operators' Occupations Tax Act."  This ordinance provided for "a tax in the amount of 3% . . . upon all persons engaged in the business of renting, leasing or letting rooms in a hotel, said tax to be stated separately as an additional charge on individual billings."  Pls.' Ex. 73, dkt. no. 256-12, at 52.  It stated that "said tax shall be remitted quarterly" and that "in the event these funds are not remitted by the deadlines listed . . . , a fine of 1.5% per month on the outstanding balance shall be added for each month the payment is delayed."  *Id.*

The ordinance was later amended to increase the tax rate to five percent.  It was also amended to provide for a remittance schedule, and to impose requirements for maintaining books and records:  "Every taxpayer required by [this ordinance] to pay the tax imposed by [it] to the village's Finance Department shall keep accurate books and records of its business activity . . . ."  Pls.' Ex. 74, dkt. no. 256-12, at 55.  Lombard's ordinance makes no indication that it is applicable to any narrower group than "all persons engaged in the business of renting, leasing or letting rooms in a hotel."  It also makes no indication that its tax is applicable only to the cost of occupancy.  Instead, Lombard's ordinance unambiguously requires all persons engaged in the business of renting to collect and remit five percent of the charge on individual billings.  Unlike all of the other ordinances under which plaintiffs seek money from defendants, Lombard's ordinance both applies to defendants and requires them to pay taxes on transactions

36

associated with their business of renting hotel rooms.  This includes all of the money consumers pay under retail rates.

Defendants argue that Lombard cannot tax them on these transactions because doing so would violate the Illinois Constitution in three ways.  First, they argue that the Illinois Constitution permits home rule units such as plaintiffs to tax only transactions that occur within their jurisdictions.  Second, they contend that the Illinois legislature has not specifically authorized Lombard to impose so broad a tax.  Third, they argue that it would violate the Illinois Constitution's uniformity clause to require defendants to pay Lombard's tax on the retail rate while other municipalities require a tax only on the net rate.

These arguments lack merit.  First, it is true that in Illinois, "home rule units do not possess extraterritorial governmental powers."  *Commercial Nat'l Bank of Chi. v. City of Chicago*, 89 Ill. 2d 45, 77, 432 N.E.2d 227,  243 (1982).  They do, however, possess the right to tax transactions that take place within their territorial jurisdictions. *See* Ill. Const. art. VII, § 6(a).  As plaintiffs correctly point out, a municipality does not exercise its taxing power extraterritorially when it collects taxes "from persons located outside the boundaries of the local unit, but who do business within those boundaries." *Forsberg v. City of Chicago*, 151 Ill. App. 3d 354, 361, 502 N.E.2d 283, 290 (1986).  By contracting with hotels in Lombard to facilitate and profit from booking reservations for transient guests at those hotels, defendants do business within the Village.  The ordinance is therefore not unconstitutional as applied to defendants.  *See Vill. of Rosemont*, 2011 WL 4913262, at *8 (finding that the Village of Rosemont's hotel tax applies to online travel company defendants).

Second, defendants are correct that municipalities may not impose taxes without statutory authorization. *See* Ill. Const. art. VII, § 6(e). But the Illinois legislature has authorized this tax. Lombard's tax ordinance was promulgated pursuant to Illinois's Municipal Hotel Operators' Occupation Tax, 65 ILCS 5/8-3-14. This statute authorizes municipalities to "impose a tax upon all persons engaged in such municipality in the business of renting, leasing or letting rooms in a hotel . . . ." *Id.* It is not unconstitutional for a municipality to enact a tax with the exact contours of the statute that authorizes it.

Third, Lombard's tax does not violate the uniformity clause of the Illinois Constitution. The uniformity clause provides:

> In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds, and other allowances shall be reasonable.

Ill. Const. art. IX, § 2. Defendants contend that if Lombard is relying on its statutory authority to tax persons engaged in the business of renting hotel rooms in order to tax online travel companies on the full retail rate of hotel room reservations they book, it is unreasonably interpreting statutory text in order to broaden its taxing authority. Defendants contend that this violates the uniformity clause because "[u]niformity may be violated by including those not in fact within the class as well as excluding those properly within it," and because "[a] taxing body is . . . prohibited under the uniformity provisions of the Illinois Constitution from defining statutory terms contrary to their common meaning." *Northwestern Univ. v. City of Evanston*, 221 Ill. App. 3d 893, 896–97, 582 N.E.2d 1251, 1254 (1991).

"In a uniformity-clause challenge, . . . the scope of a court's inquiry is relatively narrow. A court is not required to have proof of perfect rationality as to every taxpayer."

*Empress Casino Joliet Corp. v. Giannoulias*, 406 Ill. App. 3d 1040, 1044, 942 N.E.2d 783, 788 (2011) (internal citations omitted). To survive a uniformity-clause challenge, a tax classification must "(1) be based on a real and substantial difference between the people taxed and those not taxed, and (2) bear some reasonable relationship to the object of the legislation or to public policy." *Empress Casino Joliet Corp. v. Giannoulias*, 231 Ill. 2d 62, 72, 896 N.E. 2d 277, 286 (2008) (quoting *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 153, 787 N.E.2d 786, 793 (2003) (internal quotation marks omitted)). Plaintiffs have done just that. The undisputed evidence shows that consumers purchase reservations for room rentals at hotels in Lombard directly through defendants. Lombard's tax does not cast so broad a net as to catch persons not engaged in the business of renting hotel rooms to transient guests. Instead, it reasonably taxes all persons involved in the business even if they do not own, operate, or manage hotels themselves.

Finally, defendants argue that if Lombard's tax applies to retail rates for rooms purchased through online travel companies, it violates the United States Constitution. Specifically, defendants contend that the tax runs afoul of the dormant Commerce Clause because it taxes faraway transactions without a sufficient nexus to Lombard and that it infringes defendants' right to due process because it is too vague.

These arguments, too, lack merit. The dormant Commerce Clause prohibits certain state action that interferes with interstate commerce. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997). A state tax will withstand a dormant Commerce Clause challenge if it: "(1) is applied to an activity with a substantial nexus with the taxing State, (2) is fairly apportioned, (3) does not discriminate against interstate

39

commerce, and (4) is fairly related to the services provided by the State." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977).

In *Village of Rosemont*, online travel companies made the same argument that permitting a municipality in Illinois to apply an occupancy tax to them would violate the dormant commerce clause. *See Vill. of Rosemont*, 2011 WL 4913262, at *5–8. The court rejected this argument, as have other federal and state courts. *See, e.g.*, *Travelscape, LLC v. S.C. Dep't of Revenue*, 391 S.C. 89, 106, 705 S.E.2d 28, 37 (2011); *Charleston v. Hotels.com, LP*, 586 F. Supp. 2d 538, 544 (D.S.C. 2008). First, the court in *Village of Rosemont* explained that the tax was applied to an activity with a substantial nexus with Illinois. "[T]he tax is levied for the privilege and use of renting a hotel room in [Illinois]. . . . The tax is paid by the rentor, who uses the room, regardless of where or how he made the reservation." *Vill. of Rosemont*, 2011 WL 4913262, at *7. Moreover, "defendants enter into contracts with hotels in [the Village] for the right to market, facilitate and book reservations for their properties, and they profit from such reservations." *Id.* Second, the tax was fairly apportioned because the thing being taxed could not be taxed—a room rental—could not be taxed elsewhere, for a rented room exists in only one municipality. The court also found that the tax did not discriminate against interstate commerce and was related to services provided by the state. *Id.* at 8.

The Court finds *Village of Rosemont*'s reasoning persuasive and adopts it here. Lombard taxes the rental of a hotel room within its borders; both paying to rent a room in Lombard and engaging in the business of renting a room in Lombard are activities with a substantial nexus to Lombard and Illinois. The occupancy tax is fairly apportioned, because there is no risk that its imposition will lead Illinois to tax more than

40

its share of an interstate transaction. *See Goldberg v. Sweet*, 488 U.S. 252, 260 (1989). It does not discriminate against interstate commerce, and it is related to services provided in Illinois. *See Vill. of Rosemont*, 2011 WL 4913262, at *8 ("By staying in a hotel in Illinois, the taxpayer has the advantage of the state's police and fire protection, 'along with the usual and usually forgotten advantages conferred by the State's maintenance of a civilized society,' which together 'are justification enough for the imposition of a tax.'") (quoting *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 200 (1995)).

Defendants' due process argument fares no better. A statute is void for vagueness under the due process clause only if "men of common intelligence must necessarily guess at its application or meaning." *Coats v. City of Cincinnati*, 402 U.S. 611, 614 (1971). Lombard's ordinance does not require such guessing. It applies to persons who engage in the business of renting hotel rooms in the Village. A plain and natural reading of the ordinance demands the conclusion that defendants are such persons.

In sum, defendants are engaged in the business of renting hotel rooms in Lombard, and thus they are subject to Lombard's tax. Defendants do not dispute that they have not collected and remitted taxes worth five percent of the sums collected when customers pay the retail rate to rent rooms in Lombard. Accordingly, no reasonable jury could find in favor of defendants on Lombard's claims that defendants have failed to properly collect and remit taxes under its hotel room tax. The Court therefore grants summary judgment for the plaintiffs as to liability on Lombard's claims under counts 1 and 2.

**Conclusion**

For the foregoing reasons, the Court dismisses the City of Des Plaines's claims under the O'Hare Corridor Privilege Tax. The Court grants plaintiffs' motion for summary judgment [dkt. no. 255] as to liability under the Village of Lombard's tax ordinance. The Court otherwise denies plaintiffs' motion for summary judgment. Conversely, the Court denies defendants' motion for summary judgment [dkt. no. 270] on the Village of Lombard's claims and grants defendants' motion for summary judgment on all other plaintiffs' claims. It appears to the Court that the only remaining matter to be determined in this case is the extent of defendants' liability to the Village of Lombard. Counsel are directed to confer regarding an appropriate procedure for making that determination (either by stipulation or by trial, unless the parties can come up with some other mechanism) and are to file a status report containing a joint proposal or separate proposals for further proceedings by no later than July 15, 2016. The case is set for a status hearing on August 9, 2016 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  June 20, 2016